OPINION OF THE COURT
William W. Serra, J.
This is a petition by an inmate of Attica Correctional Facility for a writ of habeas corpus to set aside a finding after a superintendent’s proceeding held under 7 NYCRR Part 253 that the petitioner be given 90 days loss of good time.
Petitioner alleges that the proceedings were improperly conducted and should be nullified and expunged from the record. The petition has been ordered heard as an article 78 proceeding, pursuant to the order of the Hon. Vincent E, Doyle, dated September 20, 1982.
The proceedings affecting this petitioner were held at Great Meadow Correctional Facility. It is urged, inter alia, that the petitioner was not properly advised of his right to call witnesses in his own behalf and was denied the right to be present when they were questioned.
The petitioner was charged with refusing to obey the direct order of a correction officer, with being out of place and with harassing and threatening the officer with physical violence. The hearing officer affirmed the charges.
*935 From the outset it is necessary to understand that infractions of correction facility disciplinary rules are handled administratively in three ways. Correction officers may warn or reprimand an inmate for minor infractions (7 NYCRR 251.5). Persistent or more serious infractions are handled by report to the superintendent. They are then reviewed by an adjustment committee which investigates, reviews and evaluates the alleged incidents (7 NYCRR 252.2, 252.3). The adjustment committee can then recommend nullification of the report or infraction slip. It can recommend a superintendent’s proceeding be had (7 NYCRR 252.4 [b] [2]), if it is of the opinion that the inmate’s behavior may have constituted a grave danger to life, health or security or has constituted a danger to a substantial amount of property and that a disciplinary sanction is necessary for the purpose of general or individual deterrence or for the purpose of preserving norms of acceptable behavior in the institution at large. It may make other recommendations not relevant to this case (7 NYCRR 252.4 [b] [3], [4], [5], [6], [7]; 252.4 [c]). It may also make dispositions of a corrective nature to secure the cooperation of the inmate with departmental and facility policies, rules and programs, including imposition of loss of privileges to 30 days, confinement to cell or room for days or hours for seven days, and confinement to a special housing unit with immediate recommendation for a superintendent’s hearing (7 NYCRR 252.5).
The most critical question in this case has to do with the circumstances surrounding the right of an inmate to call a witness and procedures to be followed in a superintendent’s proceeding. The court has been furnished with unreported decisions revolving around the distinctions between adjustment committee hearings and superintendent’s proceedings, the applicability of due process requirements and the conformity with the Official Compilation of Codes, Rules and Regulations of the State of New York. The decisions are not entirely in agreement.
7 NYCRR 253.4 (b) (1) says, “The inmate shall be permitted to call witnesses on his/her behalf, provided that so doing does not jeopardize institutional safety or correctional goals.”
*936 In this case the petitioner was advised in writing in the formal charges that, “Inmate shall be permitted to call witnesses on behalf providing that so doing does not jeopardize Institutional Safety or Correctional Goals.” At his first appearance before the hearing officer in the superintendent’s proceeding on January 16, 1981, the hearing officer advised him of various rights including a reading of the charges and, in part, “You may be permitted to call witnesses in your own behalf, provided that so doing does not jeopardize institutional safety or correctional goals”. He further stated, “OK. Then on January 14,1982 at 10:00 a.m., Mr. Colin Thompson, Correction Counselor, delivered the charges to you on this, offered assistance and he asked you if you wanted witnesses, and you said yes. He gave you Chapters 5 & 6, is that correct, Sergeant Hamlin has them back now. And, the witness that you wanted interviewed was A-6-2, Majeed, 78-A-3964, right?” He read a signed statement of the witness Majeed, and subsequently stated, “Inasmuch as you have denied these charges, it will be necessary for me to interview the witnesses and I will call you back. It will probably be tomorrow, probably won’t be today, after I talk to these people.” He then interviewed the witness Majeed out of the presence of the petitioner. At the interview he advised the witness of the charges and taped the answer of Majeed. The tape has been reduced to writing and presented to this court but not to the petitioner.
At the resumption of the hearing, in addition to other evidence, he gave an abbreviated summary of the taped statement of Majeed, reviewed the statement of the complaining correction officer and commented that the inmate Majeed “really didn’t tell us all that much.”
It is not denied by the respondent that the procedures here are pretty much standard in the department. Witnesses are usually interviewed out of the presence of the inmate, are taped and not replayed or read back to the inmate. They are summarized to the inmate later in the superintendent’s proceeding.
The petitioner urges that these procedures deny the inmate due process and violate the rules laid down by the United States Supreme Court in Wolff v McDonnell (418 *937 US 539), hereinafter described as Wolff and Matter of Amato v Ward (41 NY2d 469).
In Wolff (supra) the court laid down two basic requirements and one additional serious need for due process in prison disciplinary proceedings.
The Nebraska procedures, the subject of Wolff, are less refined than those in New York and are all handled by a single adjustment committee. Generally speaking, in minor cases misconduct is punished by deprivation of privileges as in New York. Flagrant or serious misconduct may be handled with loss of good-time credit and/or disciplinary cell confinement. It held in such cases there must be advanced written notice of the claimed violation and a written statement of the fact findings as to the evidence relied upon and the reasons for the disciplinary action taken (418 US, at p 563). As a third requirement, it held that an inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals (supra, p 566). The court says, however (supra, p 566), “Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards as presented in individual cases.”
As to Matter of Amato v Ward (supra), a case dealing with an entirely different problem of final determinations of the time allowance committee, the court pointed out that New York procedural rules exceed the requirements of Wolff (supra) and found that the time allowance committee could assume that protections exceeding the requirements of Wolff had been followed and act accordingly. It is not controlling here.
On the appearance before this court, the only issue presented by counsel was that of the right to call a witness before the superintendent’s proceeding. Other challenges of the petitioner, e.g., excessive keep-lock time and delay in hearing, have either been resolved waived, or remain issues for further proceedings. In view of the findings herein, they will not be reached.
*938 It was elaborated upon in great detail by Mr. Justice White in Wolff {supra) that the nature of correction facilities is such that due process therein is subject to restrictions imposed by the nature of the regime to which the inmates have been lawfully committed. The proceedings are not criminal in nature and do not give rise to the full panoply of rights of a free citizen (418 US, at pp 554, 555, 562). In view of the intimidating nature of a prison environment as between the inmates themselves and the constant confrontations of inmates and correction officers, procedures must be viewed with the perspective of the atmosphere in which the action takes place.
For the protection of all the personnel involved, the proceedings are specifically noncriminal in nature (7 NYCRR 252.2, 253.2, 253.4 [a]). In a superintendent’s proceeding, they have generally been conducted out of the presence of the inmate by recorded interviews of witnesses (7 NYCRR 253.4). There is no provision for cross-examination in the rules, and it is not constitutionally required {Wolff, 418 US 539, 567). Under these circumstances the calling of a witness cannot be deemed to mandate in all cases personal appearance before the hearing officer whose duty is to interview witnesses upon adequate record and to find and report findings and facts (7 NYCRR 253.4 [i]). However, a failure to do so must be explained and can only be justified if it will jeopardize institutional safety or correctional goals.
Elaboration of appropriate Wolff procedures has been held in a series of cases entitled Powell v Ward (392 F Supp 628 [1974], 542 F2d 101 [1976], 487 F Supp 917 [1980], 643 F2d 924 [1981], cert den 454 US 832).
The Powell cases arose out of findings of flagrant abuses of the constitutional rights discussed above in Wolff {supra) at the Bedford Hills Correctional Facility. In connection with the calling of witnesses, the following determinations were madé:
“When it is determined that possible hazards to institutional safety or correctional goals preclude a witness’ presence at the hearing, the prison officials may interview her out of the presence of the inmate. However to enable the *939 inmate to present a defense, she should, under ordinary circumstances, be permitted to listen to the tape or read the transcript, unless the prison officials determine that this would also jeopardize institutional safety or correctional goals * * *
“If an inmate is not permitted to have witnesses present, the interview may be conducted out of her presence and tape recorded. The tape or transcript of the interview, which is to be considered part of the record of the hearing, is to be made available to the inmate prior to or at the hearing, unless prison officials determine that this too would jeopardize institutional safety or correctional goals. In either case, a written explanation of the denial of witnesses is to be given to the inmate.” (487 F Supp, at p 929.)
“To the extent that the defendants interviewed witnesses requested by inmates they did so outside the presence of the inmate and tape-recorded all or part of the interview; they did not normally incorporate the interview into the record of the hearing and they did not allow the inmate to hear the tape or see a transcript of the interview. The Court ruled that If 1 (b) must be interpreted to allow witnesses to be present at disciplinary proceedings unless the appropriate officials determine that this would jeopardize institutional safety or correctional goals; in the latter circumstances, a written explanation must be given to the inmate.” (643 F2d, at p 929.)
As further facts the court finds:
(1) No reason was given for not producing witness Majeed;
(2) The tape of Majeed’s testimony has three blanks, leaving an insufficient record to the court for review;
(3) Majeed advised that the brick mason teacher witnessed the incident. The petitioner was not told of this, and he was therefore in effect denied the right to call this man as a witness, a particularly important witness since he was a member of the correctional staff and was not interviewed. Also, Majeed advised another inmate witnessed the incident. Wilson was not told of this, and his investigative assistant was therefore prevented from determining who *940 this witness may have been, and the petitioner was denied the right to call this man as a witness by reason thereof;
(4) The inmate Majeed denied the threats allegedly made and the vulgarities Wilson was claimed to have made. Wilson was not told this, and the record is therefore incomplete;
(5) No written findings or decision was made by the hearing officer and reported to the petitioner as required by 7 NYCRR 253.4.
Since the petitioner has therefore been denied his constitutional right to due process, as well as conformity with 7 NYCRR 253.4, the relief sought in the petition is granted, and the disciplinary proceedings against the petitioner shall be expunged from the record and his good time restored. (See, also, Matter of Hurley v Ward, 61 AD2d 881.)