OPINION OF THE COURT
Edmund L. Shea, J.
Petitioner brings this article 78 proceeding to challenge the determination of a superintendent’s proceeding concluded on October 7, 1982. The original superintendent’s proceeding held to consider the underlying incident was concluded on March 3, 1982. That proceeding was remanded due, inter alia, to respondents’ admission that the hearing officer failed to personally interview petitioner’s witnesses, although it would not have jeopardized institutional security or correctional goals to do so, and that petitioner was not informed of the substance of his witnesses’ statements.
The decision to annul the original proceeding and remand for a new hearing was rendered from the Bench on August 19, 1982. An order was signed on September 1, *239 1982, entered on September 10, 1982 and served on petitioner’s attorney under cover of letter dated September 13, 1982. It is conceded that petitioner remained confined to a special housing unit as a result of the March 3, 1982 superintendent’s proceeding until October 1, 1982. The continued restrictive confinement of petitioner following the annulment of the proceeding pursuant to which he was confined was unconscionable and arguably in violation of the spirit, if not the letter, of the seven-day rule and the due process considerations which support the rule.
The second proceeding, which is now under attack, was convened on October 1, 1982 before Captain Curran. Captain Curran disqualified" himself during the course of the proceeding which was reconvened on October 4, 1982 before Deputy Superintendent Wayne Barkley. Hearing Officer Barkley did not personally interview petitioner’s witnesses. Instead, he merely listened to tapes of interviews conducted by Captain Curran. The hearing officer also allegedly failed to interview confidential informant witnesses, relying instead on an interview of Lieutenant J. Wood, who interviewed the confidential informant witnesses. Hearing Officer Barkley also interviewed security personnel. The petitioner was not present during any of these interviews.
Petitioner pleaded not guilty to the charges against him. The hearing officer nonetheless affirmed the charges brought against the petitioner. This was done prior to permitting the petitioner to read the statements of his witnesses or to listen to the transcript of their interviews with Captain Curran. The discipline imposed upon petitioner was 360 days’ loss of good time.
Petitioner alleges that this determination was arbitrary and capricious, an abuse of discretion and that it was reached in violation of the governing rules and regulations. It is argued that the hearing officer failed to interview any individual who witnessed the underlying incident or had direct knowledge thereof, thereby disabling him from judging the credibility of such witnesses. Secondly, the hearing officer is alleged to have failed to interview an employee who witnessed or had direct knowledge of the relevant incidents of misbehavior. (Matter of *240 Thomas v Coughlin, Supreme Ct, Dutchess County, April 26, 1982, Aldrich, J.; 7 NYCRR 253.4 [c].) Third, the hearing officer failed to inform petitioner of the factual circumstances supporting the charge to the extent that doing so would not have jeopardized institutional safety or correctional goals. (7 NYCRR 253.4 [e].) Fourth, the hearing officer failed to personally interview petitioner’s witnesses, although doing so would not have jeopardized institutional safety or correctional goals. (7 NYCRR 253.4 [b] [1].) Fifth, petitioner was not informed of his right to be present when his own witnesses were interviewed, nor was he allowed to be present at those interviews. Further, petitioner was not informed of the substance of the statements by his witnesses prior to the completion of the superintendent’s proceeding. (7 NYCRR 253.4 [b] [1].) Sixth, the hearing officer is alleged to have relied on confidential informants without a sufficient showing of their credibility or the reliability of their information. Finally, it is alleged that the hearing was not held in a timely fashion and that it was not conducted in a fair and impartial manner.
Respondents emphasize the violent nature of petitioner’s prison record. Beginning with his incarceration for murder and other crimes of violence, petitioner, serving a life sentence, has been the subject of numerous prison disciplinary actions. Petitioner’s disciplinary record is an extensive compendium of violent acts and other transgressions of prison rules. The charges underlying the proceeding at bar are that petitioner stabbed and seriously wounded two inmates on February 12, 1982.
The court’s review of the information provided by confidential witnesses indicates that the information is reliable and that it supports the disposition reached by respondents. Moreover, the decision to maintain the confidentiality of these sources is reasonable in light of the information provided and the petitioner’s reputation. Under no circumstances should petitioner or his counsel be given access to this material. The use of confidential informants has been sanctioned by the case law where, as here, the need for confidentiality appears on the face of the record. (Matter of Guzman v Coughlin, 90 AD2d 666; Matter of Gross v *241 Henderson, 79 AD2d 1086, mot for lv to app den 53 NY2d 605.)
Petitioner’s key assertion is that the hearing officer did not personally interview petitioner’s witnesses and that he was therefore unable to judge their credibility. While respondents now imply that these interviews were not personally conducted due to the needs of institutional safety and security, the hearing officer quite clearly stated on the record that he had reviewed tapes of Captain Curran’s interviews with petitioner’s witnesses, whereupon he gave the following reasons for not personally interviewing these witnesses:
“O.K., Captain Curran in doing the first proceeding did interview the other three individuals, o.k., I have that on tape * * *
“Normally the procedure would be for me to disregard that and interview those three individuals again and start over. However, I have listened to the tape, ah, I am going to present that tape as evidence, ah, in listening, having reviewed the Captain’s interview all three inmates according to their testimony, ah, I see no need to interview them again. Since they have already stated that they have no knowledge that you were involved in any stabbing * * *
“Ah, you were in the yard at the time, you were in the corridor at the time but according to those three witnesses they did not see you involved with this inmate * * *
“All these individuals said is that they didn’t see you. That didn’t mean you couldn’t be involved. They just said they didn’t see you involved. It doesn’t mean you weren’t involved * * *
“Well, just a second if I somebody says to me did you see that man, ah, hit the other guy and I said no, I didn’t see him hit him. That doesn’t mean the guy didn’t hit him, does it? I mean I may have turned my head, I may have been around the corner. He may have still been the same person that hit him. I just didn’t see it. I, that’s all those witnesses are saying, they didn’t see you do it.”
However, a review of the transcripts of the interviews with these witnesses reveals that they went beyond simply stating that they didn’t see petitioner do it. They all placed *242 themselves in the area where the attacks are alleged to have occurred, in the company of the petitioner and others. Although they saw the petitioner, they did not see him become involved in an altercation with anyone. One of his witnesses stated that petitioner was standing next to him when the second stabbing occurred, a good distance down the corridor from them. If this inmate was telling the truth, the petitioner could not have been involved in the second stabbing. Hence, an assessment of this witness’ credibility was essential to a fair resolution of the proceeding.
It is the hearing officer’s duty to impartially and fairly conduct a superintendent’s proceeding over which he presides, in accordance with the governing regulations. Where, as here, a stark question of credibility is presented, it is imperative that the hearing officer personally interview the accused inmate’s witnesses. In the case at bar, the hearing officer did not interview any witnesses with direct knowledge of the incident. Clearly such witnesses should have been interviewed, given petitioner’s denial of guilt, especially if any employee witnesses existed. (Matter of De Mauro v LeFevre, 91 AD2d 1156; Matter of Hilton v Dalsheim, 81 AD2d 887; Matter of Longo v Fogg, 71 AD2d 955; Matter of Jackson v Kuhlmann, 109 Misc 2d 437; 7 NYCRR 253.4 [c].)
The inmate witnesses should have been personally interviewed by the hearing officer. The original proceeding was annulled and the matter was remanded to permit, inter alia, a correction of this very defect as conceded by respondents. Finally, although there were apparently no correctional facility employees who witnessed the stabbings, there were employees who could have shed light on the circumstances surrounding these incidents, yet the hearing officer failed to personally interview them.
The hearing officer’s failure to interview the petitioner’s inmate witnesses is compounded by other errors in the proceeding. In answer to petitioner’s assertion that his witnesses were not interviewed in his presence, respondents, departing from the unsatisfactory rationale relied upon by the hearing officer, now assert that to have interviewed his own witnesses in his presence would have *243 jeopardized institutional safety and security. There is no evidence on this record, including the in camera materials, that would indicate that to have called or interviewed these witnesses in petitioner’s presence would have jeopardized institutional safety or correctional goals. Certainly no such finding or rationale was suggested by the hearing officer. The failure to interview an inmate’s witnesses in his presence, in these circumstances, has been viewed as error warranting a reversal of the superintendent’s proceeding. (Matter of Wilson v Smith, 117 Misc 2d 934; Matter of Cutolo v Dunham, 117 Misc 2d 722; People ex rel. Martin v Smith, 117 Misc 2d 66; People ex rel. Cooper v Smith, 115 Misc 2d 689; see, also, De Mauro, supra.)
Finally, respondents concede that petitioner was not permitted to listen to the tapes of interviews with his witnesses until after the hearing officer had reached a determination as to the charges. They maintain that the regulations require only that petitioner be confronted with and permitted to comment on evidence supporting the charges against him prior to a decision being rendered. (7 NYCRR 253.4 [e].) If there was error in not permitting petitioner to review the tapes prior to the disposition, such error is said to be harmless and not prejudicial since his witnesses’ statements all supported petitioner’s position.
Petitioner contends that he was entitled by regulation to, at the very least, hear his witnesses’ statements prior to the conclusion of the proceeding. The failure to do so is said to have unduly restricted his right to comment fully on the evidence before the hearing officer.
The petitioner’s right to comment on the evidence prior to a final disposition of the charges against him has been settled by the cases. (Matter of Kincaide v Coughlin, 86 AD2d 893, app dsmd 57 NY2d 682; Matter of Romano v Ward, 96 Misc 2d 937.) The court need not resolve at this time the question of whether an accused inmate at a superintendent’s proceeding is entitled to hear all the evidence considered by the hearing officer, excluding that not revealed for reasons of confidentiality, before he is given an opportunity to comment and before a final disposition is reached. It is sufficient to observe that this would certainly be the preferable procedure.
*244 In sum, the petition must be granted in its entirety due principally to the failure of the hearing officer to personally interview the petitioner’s witnesses and the failure to interview those witnesses in petitioner’s presence without good cause. A second remand of this matter is not warranted due to the length of time since the underlying incident and respondents’ now repeated failure to afford the petitioner a fair and procedurally adequate hearing. It is to be noted in this regard that two of petitioner’s original witnesses were not interviewed for the rehearing, one having died and the other having been transferred to another correctional facility.
The superintendent’s proceeding concluded on October 7, 1982 is hereby annulled and the charges upon which it was based are dismissed, with prejudice. Petitioner’s record is to be expunged of all references to this proceeding and the good time of which he was deprived is to be restored.