■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT SELCOV, on Behalf of JORY LOWRANCE, Appellant, v THOMAS A. COUGHLIN, III, as Commissioner of New York State Department of Correctional Services, et al., Respondents. — In a habeas corpus proceeding, which was converted into a proceeding pursuant to CPLR article 78[1] to review a determination made after a superintendent's proceeding and to compel respondents to expunge from petitioner's institutional files all disciplinary records pertaining to that proceeding, petitioner appeals from a judgment of the Supreme Court, Dutchess County (Rosenblatt, J.), dated October 20, 1982, which dismissed the proceeding. Judgment reversed, on the law, without costs or disbursements, petition granted, determination annulled and the respondents are directed to expunge from petitioner's institutional record all references to the superintendent's

---

1. This proceeding was denominated a writ of habeas corpus and sought, in addition to the relief requested here, petitioner's release from confinement in a special housing unit. By the time the proceeding was heard at Special Term, petitioner had already been released from the special housing unit and the action was converted to a proceeding pursuant to CPLR article 78.

proceeding. The petitioner, an inmate at the Clinton Correctional Facility, was charged with the assault of a correction officer and refusing to obey a direct order. Petitioner denied the latter charge and, with regard to the former, asserted that he was assaulted from behind by a correction officer while petitioner and 11 other inmates were returning from the telephone room and that he acted in self-defense. After the incident, petitioner was taken to the prison hospital unit and confined there in special housing unit (SHU) status. Petitioner was found guilty of all charges after a superintendent's proceeding and the hearing officer imposed a punishment of 180 days' confinement in a SHU and loss of one year good behavior allowance. The disposition of the proceeding was subject to automatic administrative review pursuant to 7 NYCRR former 270.2[2], and was affirmed. Thereafter, petitioner instituted this proceeding alleging that numerous constitutional and regulatory violations had been committed during the superintendent's proceeding. Special Term dismissed the petition on the merits. We disagree. 7 NYCRR former 253.3 provided that an inmate facing disciplinary charges shall have the right to the assistance of an employee who "shall investigate any reasonable factual claim the inmate may make". The primary function of the employee assistant "is to offer the inmate the opportunities of telling his side of the story to someone who has the mobility he may not have to gather evidence on his behalf and search for the truth of the situation" (*Matter of Gunn v Ward,* 71 AD2d 856). Prior to the superintendent's proceeding, petitioner was interviewed by his employee assistant. The "Notice and Assistance" form, filled out by the assistant, sets forth petitioner's side of the story which is essentially that on the way back from the telephone room with other inmates he was verbally abused and sworn at by Correction Officer Clarence Trudeau. Petitioner asserted that Officer Trudeau asked him to step out of the line and then struck him from behind. Petitioner further asserted that he struck Officer Trudeau only in self-defense. This version of the incident is markedly different than Officer Trudeau's who related in his misbehavior report and during the superintendent's proceeding that petitioner was disruptive both in the telephone room and on the way back to the block and, when ordered to enter the block, petitioner refused and struck Officer Trudeau. The "Notice and Assistance" form also indicates that petitioner requested his employee assistant to interview one witness, a Philip Corie. The record indicates that the assistant interviewed that witness, whose real name was Philip McCrory. McCrory's statement states that he did not witness any events other than an "exchange of words" in the telephone room. At the superintendent's proceeding, petitioner stated that at the time of his interview with his employee assistant, he gave the assistant a list of 11 men who were in the telephone room at that time and requested him to interview those inmates. (This list apparently was a prison list of those inmates scheduled to make telephone calls that day.) He further stated that he could not select a few names off the list because he did not know any of the inmates by name. Petitioner's assertion that he requested his assistant to interview inmates on the list is not refuted by any evidence in the record and, moreover, there is no evidence that the employee assistant made any efforts to investigate petitioner's claim other than to interview McCrory. Although such request was not indicated in the "Notice and Assistance" form, that form was neither prepared nor signed by petitioner (*Matter of Hilton v Dalsheim,* 81 AD2d 887). Given the seriousness of the charges against petitioner and the marked contrast between the versions of the incident presented

---

**2.** 7 NYCRR chapter 5 (covering parts 250-270) was extensively amended, effective June 15, 1983. Because the disciplinary proceeding herein occurred before that time, it was governed by the regulations then in effect (see *Matter of Mallard v Dalsheim,* 97 AD2d 545).

by petitioner and Officer Trudeau, the efforts of the employee assistant in this case were woefully inadequate. Even if petitioner had not specifically requested him to interview the men on the telephone list, it could not be said that the interviewing of one prospective witness who stated that he did not see the incident at issue meets the obligation that the employee assistant had under former section 253.3 to "investigate any reasonable factual claim the inmate may make". An adequate investigation of petitioner's claim would have revealed which inmates on the list, if any, could have provided information necessary for petitioner's defense. We therefore find that respondents violated 7 NYCRR former 253.3 in that petitioner did not receive adequate employee assistance in preparation for the superintendent's proceeding. Moreover, we hold that petitioner was deprived of his right to call witnesses on his behalf. This constitutional right, established in *Wolff v McDonnell* (418 US 539), was clearly provided for in 7 NYCRR former 253.4 (b) (1), which stated "the inmate shall be permitted to call witnesses on his/her behalf, provided that so doing does not jeopardize institutional safety or correctional goals". Petitioner was deprived of this right in a number of ways. First, despite petitioner's specific request, the one witness that he could identify by name, Philip McCrory, was not called, and no explanation was offered therefor. Second, despite petitioner's specific request, he was not permitted to be present when the hearing officer interviewed four inmates who were chosen randomly from the telephone list. Although it is clear that a hearing officer may interview witnesses out of the presence of the inmate when to allow the inmate to be present would jeopardize institutional security or correctional goals (*Wolff v McDonnell, supra;* 7 NYCRR former 253.4 [b] [1]), in this case petitioner was not informed that he would not be allowed to be present until after the interviews had occurred. Moreover, no reason was given by the hearing officer for such refusal except a conclusory statement that "[i]t does not meet with Security Procedure or Correctional goals for you to be present during those interviews". There is no evidence in the record to demonstrate that petitioner's presence would have created any threat to prison security or correctional goals. Petitioner should have been told prior to the interviews that he would not be allowed to be present and, moreover, a written explanation for such refusal should have been proffered (*Powell v Ward*, 487 F Supp 917, 929, mod on other grounds 643 F 2d 924, cert den 454 US 832; *Matter of Tolden v Coughlin,* 90 AD2d 929). Third, petitioner requested the hearing officer to call all 11 inmates on the telephone list. The hearing officer refused and, rather, called four inmates at random from the list, all of whom stated that they did not see the relevant events. While 11 witnesses may ordinarily be excessive, given the employee assistant's inadequate efforts to identify which inmates could be useful witnesses, and petitioner's inability to identify any of the inmates by name, the hearing officer should have interviewed additional witnesses. In view of the circumstances of this case, we find annulment of the determination made after the superintendent's proceeding and expungement from petitioner's institutional record of all references to the proceeding to be the proper remedy (*Matter of Mallard v Dalsheim,* 97 AD2d 545; *Matter of Burke v Coughlin,* 97 AD2d 862; *Matter of Hilton v Dalsheim,* 81 AD2d 887, *supra*). Mollen, P. J., Weinstein, Brown and Boyers, JJ., concur.