OPINION OF THE COURT
Edmund L. Shea, J.
Submissions were received from two inmates at the Clinton Correctional Facility. In each case petitioner was served with a misbehavior report, a hearing was held, and the charges were dismissed. Petitioners seek complete expunction from their records of all references to the charges and the hearings.
Treating the submissions as ex parte applications for orders to show cause, the court issued orders compelling the Attorney-General to show cause why the relief sought should not be granted. The Attorney-General has responded to each petition.
The first submission the court received was from John Ransom. In his case the "Disciplinary Hearing Disposition Rendered” says: "Dismiss charge-”, "investigation has disclosed facts that the reporting employee was not aware of at the time he wrote the report-”. Mr. Ransóm appealed from the Tier II hearing disposition on the charge of violating rule 26.10 (transfer of property). On appeal the disposition was affirmed. In answer to the only question petitioner raised on appeal, "Report will remain on record”, appeared above the affirming officer’s signature. Mr. Ransom’s petition does not allege that he availed himself of the procedure established in Correction Law § 139 and D.O.C’s Directive No. 4040.
The second submission received was from Lundes Garrett. Mr. Garrett received a misbehavior report on September 23, 1985. On October 2, 1985, a hearing commenced. The hearing was postponed. The reason given, Mr. Garrett alleges, was the need for oral testimony from the reporting officer, who was apparently unavailable on October 2, 1985. Garrett was never called back to the hearing, and he never received a disposition. On or before December 9, 1985, a correction officer showed Garrett a portion of his disciplinary sheet. The sheet contained the following: "10/2/85 DiscHrg Dismiss charge.” On December 9, 1985, Garrett wrote a letter to the facility *940 Superintendent requesting that reference to the dismissed charges be expunged from his records. On December 31, 1985, a First Deputy Superintendent, to whom Garrett’s request had been referred, wrote to Garrett. The interdepartmental correspondence from the First Deputy Superintendent to Garrett said: "Please be advised that the action of the hearing officer is part of your permanent record. Your disciplinary sheet clearly indicates that the charges were dismissed and this fact will be considered by any individual or committee reviewing your record in the future.” As with Mr. Ransom’s petition, Mr. Garrett does not allege that he availed himself of the inmate grievance program.
The New York State Court of Appeals, in Matter of Patterson v Smith (53 NY2d 98, 103-104 [1981]), said: "By the grievance procedure mandated by section 139, prison inmates have been provided with * * * methods of dealing with an adverse file entry. In view of the declared legislative policy to have such matters dealt with by grievance resolution committees rather than by the courts, this proceeding should have been dismissed without prejudice (Matter of Buxton v Winch, 78 AD2d 758; Matter of Scott v Smith, 77 AD2d 681, 682; People ex rel. Williams v Ward, 73 AD2d 941; Matter of La France v Ward, 64 AD2d 989), unless respondents must be held to have waived petitioner’s failure to resort to the grievance resolution procedure.”
In Patterson (supra), an inmate, by means of CPLR article 78, sought to have removed from his permanent file an entry concerning his involvement in an escape plan. The entry was made upon receipt of a misbehavior report. No disciplinary hearing was ever held. The charge, neither dismissed nor affirmed, remained on his record. On appeal, the prisoner sought to have a hearing ordered at which the entry’s correctness would be determined. Patterson is distinguishable from the instant petitions.
Garrett’s and Ransom’s files now reflect entries made as the result of agency determinations. They have appealed the action taken and although the dispositions of their hearings were affirmed, the action has not been redressed. Their files reflect the fact that charges were brought and dismissed.
Garrett and Ransom have exhausted the administrative remedies attendant to the process which led to the entries in their files. They should not now be made to address this problem through the inmate grievance program.
*941 Furthermore, the Attorney-General’s papers in both cases do not raise failure to exhaust administrative remedies and the Attorney-General may be deemed to have waived the objection. (Patterson v Smith, supra; and see, Matter of Hilton v Dalsheim, 81 AD2d 887 [2d Dept 1981].)
These proceedings must be classified as falling under CPLR 7803 (3). The obvious contention of the inmates is that maintenance of any reference to the proceedings will result in detriment to them. Although not resulting from a disposition of guilt, the notations may at some future review result in extended incarceration or other indirect penalty. The question these cases raise is whether failure to expunge inmate records following a dismissal of misbehavior charges constitutes an abuse of discretion.
Ordinarily when a court expunges an inmate’s record the proceeding is on review before the court. (See, e.g., Powell v Ward, 643 F2d 924 [2d Cir 1981], cert denied 454 US 832 [1981]; People ex rel. Selcov v Coughlin, 98 AD2d 733 [2d Dept 1983]; Matter of Burke v Coughlin, 97 AD2d 862 [3d Dept 1983]; Matter of Williams v LeFevre, 90 AD2d 579 [3d Dept 1982]; Matter of Hilton v Dalsheim, 81 AD2d 887 [2d Dept 1981], supra; Matter of Hurley v Ward, 61 AD2d 881 [4th Dept 1978]; Matter of Wilson v Smith, 117 Misc 2d 934 [Sup Ct, Wyoming County 1983]; Matter of Abdullah v Smith, 115 Misc 2d 105, affd 96 AD2d 742 [4th Dept 1983]; Matter of Jones v Coughlin, 112 Misc 2d 232 [Sup Ct, Albany County 1982].) Unlike the above-cited proceedings, the instant petitions do not present questions concerning the proceedings. In these petitions the discretion being reviewed was exercised after a defect was discovered and recognized in the administrative process. However, the cases cited above represent authority for the proposition that in matters such as this a court may order expunction. (Contra, Matter of Fletcher v Scully, Sup Ct, Dutchess County, 1985, Beisner, J.) The issue therefore becomes not whether the court may act in this situation, but whether its equitable powers are triggered by the presence of an inequity occasioned by an abuse of discretion. The issue in these proceedings is not such as arises under the rubric of mandamus where the exercise of a statutory duty is put to the arbitrary and capricious test. (Contra, Matter of Byers v LeFevre, Sup Ct, Clinton County 1986, Duskas, J.)
In the often quoted Matter of Pell v Board of Educ. (34 NY2d 222, 231 [1974]), the Court of Appeals, Judge Stevens for *942 a unanimous court, wrote: "where a determination is made and the person acting has not acted in excess of his jurisdiction, in violation of lawful procedure, arbitrarily, or in abuse of his discretionary power, including discretion as to the penalty imposed, the courts have no alternative but to confirm his determination (CPLR 7803, subd. 3; Matter of Procaccino v. Stewart, 25 N Y 2d 301; but see Matter of Picconi v. Lowery, 35 A D 2d 963, affd. 28 N Y 2d 962).”
The Pell court adopted the Third Department’s view that under what is now CPLR 7803 (3) an administrative determination may be set aside "only if the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness.” (Matter of Stolz v Board of Regents, 4 AD2d 361, 364 [3d Dept 1957]; Matter of Pell v Board of Educ., supra, pp 232-233.)
Inmate records are reviewed for many reasons. Based upon review of inmate records, Parole Boards and time allowance committees make serous decisions affecting the degree of restraint under which inmates are held. (See, e.g., 7 NYCRR 1900.4.) The possibility exists for an entry concerning a charge later dismissed to affect the outcome of such a review. The potential for this sort of error is evident from a perusal of the record pertaining to Lundes Garrett. The charges brought are noted on one line and their dismissal is noted further down in the record. The potential for confusion or misreading is obvious. (See, Matter of Collins v Hammock, 52 NY2d 798 [1980].) Were such confusion or misreading to affect another administrative decision, the prisoner would, albeit indirectly, be punished for an offense for which he was not found guilty. This is what, preying upon these inmates, led to the instant proceedings. The potential for incorrectly prolonged incarceration is indeed a heavy burden for an inmate to bear. Under the facts these proceedings present, a state of affairs exists in which the action taken is disproportionate to the administrative determination. The mere potential for an indirect penalty being imposed upon prisoners for infractions for which guilt is not established places prisoners in a shockingly unfair status.
The simplest way to avoid potential errors and the best method of assuring that the dismissed charges will play no role in any future decisions is expunction. This approach has been recommended by the American Bar Association, Joint Committee on the Legal Status of Prisoners and the National Advisory Commission on Criminal Justice Standards and *943 Goals, Corrections. (See, Gobert & Cohen, Rights of Prisoners §8.12, appendix D, part III, 3.2 [h]; appendix E, 2.12 [4] [1981].)
The records of the petitioners, Garrett and Ransom, are to have expunged from them all references to the dismissed charges. Their records should appear as they would if the ill-fated charges were never noted down.
Concern has been expressed in the past that where courts grant relief such as is granted in this decision, the administrative review process becomes but a stepping stone to the judiciary. The end result of too frequent review of administrative actions is the undermining of administrative authority. However, the administration’s authority would not be in jeopardy if its discretion were exercised with the civil rights of inmates weighing in the balance against its own convenience. A lack of adequate remedial action can have as great an effect on liberty as aggressive and procedurally correct prosecution and justified penalization.
The relief sought is granted.