OPINION OF THE COURT
Meyer, J.
This appeal presents the question whether a prison inmate is entitled as a matter of due process to a trial concerning the correctness of an entry in his permanent file that he was involved in a plan to escape from a correctional facility. By article 78 proceeding petitioner sought expungement from his records of all references to such an escape plan. The order entered at Special Term did not direct ex-pungement. It did, however, prohibit consideration of the alleged escape plan upon any application by petitioner for transfer, assignment, programs, temporary release, conditional release, parole or request for commutation unless within 90 days after receipt of the order the Department of Correctional Services commenced a disciplinary proceeding based upon the allegation. The Appellate Division affirmed, without opinion, two Justices dissenting.
The order of the Appellate Division should be reversed, without costs, on the ground, expressly pleaded in respondents’ answer, that petitioner did not pursue the administrative remedy available to him under section 139 of the Correction Law. Petitioner argues that we should not dismiss the proceeding on that ground because it was waived at the hearing before Special Term and because there is nothing in the record to establish that the grievance procedure was ever expressly brought to his attention. For the reasons that follow we conclude that the proper course, both as a matter of jurisprudence and as a matter of correction law, is to dismiss without prejudice to any further action or proceeding petitioner may be advised to bring *101 after his complaint has been considered under the grievance procedure which section 139 of the Correction Law makes available to him.
Section 139 was enacted as a result of the Attica uprising. The McKay Commission, appointed to look into the causes of that uprising and make recommendations for change, concluded that a major cause of inmate tension was the lack of a nonviolent means of resolving grievances (Memorandum of State Executive Department, McKinney’s Session Laws of NY, 1975, pp 1705-1706). Because relief in the courts was deemed “neither a workable nor a desirable solution,” the grievance procedure enacted by the section was proposed as “an alternative to burdening the courts with matters which can and should be resolved administratively” and which by giving the department the “opportunity to correct it [a departmental procedure or practice] before the grievance is referred for outside review” placed “the responsibility where it ought to be” (id., p 1706). The Governor agreed, commenting in his message of approval that the grievance resolution committees to be established under the bills “will provide a meaningful and readily available forum for the fair resolution of grievances in each institution” (id., pp 1781-1782).
As enacted the section requires the State Comissioner of Correctional Services to “establish, in each correctional institution under his jurisdiction, grievance resolution committees to resolve grievances of persons within such correctional institution” (subd 1), and to “promulgate rules and regulations establishing such procedures for the fair, simple and expeditious resolution of grievances as shall be deemed appropriate, having due regard for the constitutions and laws of the United States and of the state of New York” (subd 2). It also permits application to the commissioner for review of the grievance resolution committee’s decision and requires the commissioner, if a party deems his resolution of the complaint to be unsatisfactory, to refer the matter to the State Commission of Correction for review and recommendation (subd 3).
Acting pursuant to section 139, the commissioner by Directive No. 4040 dated August 9, 1976 has established an *102 Inmate Grievance Program. Section III of that directive defines a grievance as follows:
“A grievance is a complaint about the substance or application of any written or unwritten policy, regulation, or rule of the Department of Correctional Services or any of its program units, or the lack of a policy, regulation or rule, or a complaint about any behavior or action directed toward an inmate.
“The grievance procedure shall be the means of determining whether or not any specific complaint falls within the foregoing definition of a grievance. Whenever such an issue is raised, the grievance may be filed and the disagreement resolved through regular grievance review procedure.” (Emhpasis supplied.)
In view of that broad definition and the power of the Grievance Resolution Committee to determine what falls within it, there can be no question that petitioner’s complaint is cognizable under the grievance program. Nor, in view of the absence from both statute and directive of language excluding from the procedure matters that would not normally be considered by the courts, is it material that petitioner’s complaint refers-to the fact that he was transferred from Ossining to Clinton and then to Attica. Though place of confinement is normally an administrative matter to be decided by the commissioner (Meachum v Fano, 427 US 215; Montanye v Haymes, 427 US 236), his discretion in this respect is not wholly unfettered (People ex rel. Brown v Johnston, 9 NY2d 482, 484; Matter of Johnson v Ward, 64 AD2d 186, 188). Moreover, transfer is here only collaterally involved, for while petitioner suggests that he was transferred because of the escape plan notation in his file he does not ask to be returned to Ossining, but rather to have the notation removed from his file so that in the future it cannot serve as a basis for an undesired transfer or prevent his receiving a desired privilege.
Essentially petitioner’s claim is that the file notation may play an important role in his prison life although he has not only not had an opportunity to confront his accuser but also may, when formal disciplinary action is taken against him, be unable to prove his innocence because of the passage of time and release or transferral of those who could *103 bear witness in his behalf, among other difficulties. The commissioner’s problems are, on the one hand, the importance of information concerning escape plans to the security of institutions under his control, the necessity for protection of informants from retribution, and the administrative problem that would be created if every such notation necessitated a due process hearing, and, on the other, the effect on inmate morale (and consequent unrest) of the uncontrolled and unanswered entry in an individual inmate’s records of adverse information. That the commissioner has not lost sight of the latter problem is clear from subdivision B of section VII of Directive No. 4040, which provides that “No copies of a grievant’s complaint may go into the grievant’s central file without the grievant’s direct consent,” and from department Directive No. 0701, which establishes a procedure for the review of an inmate’s designation as a central monitoring case (see People ex rel. Williams v Ward, 73 AD2d 941).
Without intimating any conclusion concerning petitioner’s due process contention, we note that the situation in the instant case bears some similarity to that which confronted us in Holt v Board of Educ. (52 NY2d 625). There tenured teachers sought to compel removal from their files of critical evaluations as to which no formal disciplinary proceeding had been brought. Our holding that such notations could properly be placed in the teacher’s file without formal procedures was grounded in part on the fact that appeal to the Commissioner of Education was available should an abusive practice occur and that the teacher’s union could negotiate in collective bargaining for the right to respond to or cause removal from the file of a document or letter found to constitute an abuse. By the grievance procedure mandated by section 139, prison inmates have been provided with essentially similar methods of dealing with an adverse file entry. In view of the declared legislative policy to have such matters dealt with by grievance resolution committees rather than by the courts, this proceeding should have been dismissed without prejudice (Matter of Buxton v Winch, 78 AD2d 758; Matter of Scott v Smith, 77 AD2d 681, 682; People ex rel. *104 Williams v Ward, supra; Matter of La France v Ward, 64 AD2d 989), unless respondents must be held to have waived petitioner’s failure to resort to the grievance resolution procedure.
Petitioner’s waiver argument is predicated on the failure to bring Directive No. 4040 to his attention and a statement by the Assistant Attorney-General at the Special Term hearing. That the Assistant Attorney-General’s statement related to petitioner’s efforts to get a copy of the file notation and was not intended as a waiver as to this expungement proceeding is clear from his motion, made five pages later, to dismiss the proceeding as premature. Nor can we conclude that petitioner’s lack of awareness of the procedure requires a finding of waiver. Subdivisions 1 and 2 of section 138 of the Correction Law require the publication and posting of “rules and regulations defining and prohibiting inmates [sic] misconduct” and that every inmate be provided with a written copy of such rules and regulations. However, Directive No. 4040 neither defines nor prohibits inmate misconduct. In view of the salutory purpose of section 139 and Directive No. 4040, of the fact that petitioner apparently moved promptly after hearing of the file notation to obtain a copy of it and caused the instant proceeding to be brought promptly after receipt of it, and of the Assistant Attorney-General’s concession at Special Term that the file notation problem is one that is cropping up all the time, we conclude that dismissal of the proceeding should be without prejudice to petitioner’s institution of a grievance proceeding under Directive No. 4040, and of any further action or proceeding he may be advised to bring at the conclusion of that proceeding.
Accordingly, the order of the Appellate Division should be reversed and the proceeding dismissed, without costs, and, as above noted, without prejudice.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed and the proceeding dismissed, without costs, and without prejudice to further proceedings as stated in the opinion herein.