**Richard COLE, Plaintiff,**

v.

**Doctor Felicitas MIRAFLOR, Defendant.**

**No. 99 Civ.0977 RWS.**

United States District Court, S.D. New York.

March 26, 2002.

Nixon Peabody, LLP, Buffalo, NY, By: Allison P. Gioia, for Plaintiff, of counsel.

Honorable Eliot L. Spitzer, Attorney General of the State of New York, New York, NY, By: Stacy R. Sabatini, Assistant Attorney General, for Defendant, of counsel.

## OPINION

SWEET, District Judge.

Defendant Dr. Felicitas Miraflor ("Miraflor") has moved pursuant to Fed. R.Civ.P. 56 for summary judgment to dismiss the complaint of plaintiff Richard Cole ("Cole"), a prison inmate, alleging violations of 42 U.S.C. § 1983.

For the reasons set forth below, the defendant's motion will be granted.

### Parties

Cole is a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), currently incarcerated at Wende Correctional Facility ("Wende").

Miraflor is a medical doctor, who during the relevant times for this case was stationed at the Otisville Correctional Facility ("Otisville"), in New York.

### Facts

Cole filed this complaint pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional and civil rights resulting from interference with his access to the courts and deliberate indifference to his medical needs in violation of the Eighth Amendment.

In 1965, Cole suffered a back injury after he was beaten with ax handles by corrections officers at the Brooklyn House of Detention during a riot.

From 1965 to the present, Cole has been in the custody of the DOCS, with the exception of several intermittent periods of release. While incarcerated, Cole has sought treatment for his back from the various medical departments at the prison facilities and on occasion from outside consultants or specialists, with the recommendation of medical professionals within DOCS.

Cole was transferred to Otisville in November 1995. He was incarcerated at Otisville from November 1995 to January 15, 1997. During his stay, he visited the Otisville Medical Center on numerous occasions. He saw a nurse on five occasions, on November 14, 1995; January 5, 1996; April 14, 1996; October 31, 1996; and December 13, 1996. Cole saw Miraflor on three occasions, on November 29, 1995; January 17, 1996; and November 14, 1996. He also had an appointment with another doctor, Dr. Robert Sarreck, on May 3, 1996.

The parties do not agree as to what occurred during each visit with the defendant, Miraflor. Cole claims that on each occasion, he requested a permit to sleep in a lower bunk to ease his back pain, and Miraflor refused these requests each time. Miraflor claims that each visit consisted of her prescribing medication to ease the pain and that Cole never asked for a lower bunk permit.

The New York Department of Corrections provides an administrative grievance system. Cole has not pursued these administrative remedies in light of his alleged dissatisfaction with Miraflor's actions.

In October 1997, Cole initiated this action with the *pro se* filing of a complaint against defendants Superintendent Christopher Artuz, Medical Director Norman Selwin, Green Haven Correctional Facility, and Otisville Correctional Facility. Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on April 29, 1999.

On September 3, 1999, Nixon Peabody, LLP, filed notice of appearance and has been acting as counsel for Cole in this action.

On November 2, 1999, this Court denied the defendant's motion to dismiss and granted Cole twenty days to file an amended complaint. Cole filed an amended complaint on December 14, 1999. On January 6, 2000, defendants filed a motion to dismiss the complaint. On June 12, 2000, the defendants' motion to dismiss the complaint was granted with respect to Selwin and Artuz, but denied with respect to Jane Doe.

On September 25, 2000, Jane Doe (now identified as Miraflor), filed a motion to dismiss the second amended complaint on statute of limitation grounds. Cole requested permission to file an amended complaint. This Court granted Cole's motion to file an amended complaint on February 19, 2001. Cole filed his amended complaint on March 2, 2001. The instant motion for summary judgment was marked submitted on January 30, 2002.

## Discussion

### I. Summary Judgment Standards

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir.2002).

## II. *Failure to Exhaust Administrative Remedies*

■ The Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a) states that:

No action shall be brought with respect to prison conditions under section 1983 . . . or any other federal law . . . by a prisoner . . . until such administrative remedies as are available are exhausted.

Complaints filed under § 1983 are to be dismissed if prisoners have failed to exhaust available administrative remedies. *Booth v. Churner,* 532 U.S. 731, 742, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Warburton v. Underwood,* 2 F.Supp.2d 306, 1998 WL 184287, at *2 (W.D.N.Y.1998) (dismissing all claims not previously grieved as Section 1997e "requires that all administrative remedies must be exhausted with respect to all actions brought by a prisoner concerning prison conditions"); *Alexandroai v. California Dep't of Corrections,* 985 F.Supp. 968, 970 (S.D.Cal.1997) (plaintiff must "work within the prison system to have his case heard and then come to the Court after he has exhausted his administrative remedies as required by federal law").

■ The exhaustion requirement applies to cases filed on or after the April 26, 1996 effective date of the PLRA, even if the claims on which the complaints are based accrued prior to the effective date. *Cuoco v. U.S. Bureau of Prisons,* 2000 WL

347155, at *2 (S.D.N.Y. March 2000) (*citing White v. McGinnis,* 131 F.3d 593, 595 (6th Cir.1997)). Cole filed his first complaint in October 1997, after the April 26, 1996 effective date of the PLRA. Thus, he must have satisfied any administrative remedies available at the time of the actions he complains of.

■ Cole admits that he did not file any internal grievance despite familiarity with the availability of such remedy. New York provides an internal grievance procedure for inmates for appeal of practically any issue affecting their confinement. *See* New York State Correction Law § 139 (authorizing inmates to file grievances); *Matter of Patterson v. Smith,* 53 N.Y.2d 98, 440 N.Y.S.2d 600, 423 N.E.2d 23 (1981) (interpreting § 139 broadly). *See also* 7 N.Y.C.R.R. §§ 701.2, 701.3.

Cole alleges, however, that the PLRA does not apply because he sought money damages, and pursuing a grievance within N.Y. DOCS would have been futile to obtain such an award.[1]

The Supreme Court recently addressed this contention in *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The Court held that an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief. *Id.* at 731, 121 S.Ct. 1819. Had Cole utilized the grievance procedures available to him after any of the three occasions where he claims he

---

1. Cole relies on *Woods v. Fitzpatrick,* 1999 WL 221108 (S.D.N.Y. April 14, 1999). That holding is inapposite. In *Woods,* the inmate filed his complaint prior to the effective date of the PLRA. *Id.* at *3. The court determined that the PLRA was not meant to apply retroactively. *Id.* at *4—*5. Because the PLRA did not apply, the court applied the prior law,

which, as Cole claims, did not require administrative exhaustion where the claimant sought money damages and the administration procedures would not have supplied it. *Id.* The PLRA, as interpreted by the Supreme Court, changed this rule. *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

asked for and was denied a lower bunk permit, it is possible that the administrative procedure could have at the very least provided him with the permit he sought.

### Conclusion

For the reasons stated, the defendant's summary judgment motion is granted, and the complaint is dismissed without prejudice or costs.

Settle judgment on notice.

It is so ordered.