08-2079-pr
Amador v. Superintendents of Dep't of Corr. Servs.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: June 15, 2009            Decided: August 19, 2011)

Docket No. 08-2079-pr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Lucy Amador, Bobbie Kidd, Bette Jean McDonald, Jeanette Perez,
    <u>Plaintiffs-Counter-Defendants</u>,

Stacie Calloway, Tonie Coggins, Latasha Dockery, Tanya Jones,
Kristina Muehleisen, Laura Pullen, Corilynn Rock, Denise
Saffioti, Shenyell Smith, Hope Susoh, Nakia Thompson,
    <u>Plaintiffs-Counter-Defendants-Appellants</u>,

Stephanie Dawson, Shantelle Smith,
    <u>Plaintiffs-Appellants</u>,

v.

Anginell Andrews, Superintendent, Roberta Coward, Dennis
Crowley, Alexandreena Dixon, Elaine Lord, Superintendent, Ronald
Moscicki, Superintendent, Melvin Williams, Superintendent,
Donald Wolff, DOCS Deputy Superintendent, Terry Baxter, DOCS
Director of Personnel, Richard Roy, DOCS Inspector General,
Barbara D. Leone, DOCS Director of the Sex Crimes Unit of the
Inspector General's Office, Peter Brown, DOCS Director of the
Bureau of Labor Relations, Glenn S. Goord, DOCS Commissioner,
James Stone, Office of Mental Health Commissioner, Michael Evans,
DOCS Correction Officer, Michael Galbreath, Sergeant Smith,
Mario Pique, Jeffrey Shawver, Robert Smith, Officer Sterling,
Delroy Thorpe, Pete Zawislak, Rick Larue, Rico Meyers,
Frederick Brenyah, Charles Davis,
    <u>Defendant-Cross-Defendants-Appellees</u>,

Clarence Davis, DOCS Correctional Officer,
    <u>Defendant-Appellee</u>,

John E. Gilbert III, Officer,
     Defendant-Counter-Claimant-Cross-Defendant-Appellee,

Chris Sterling,
     Defendant-Counter-Defendant-Appellee,

James Hudson,
     Cross-Claimant,

Delroy Thorpe, Department of Correctional Services,
     Cross-Defendant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:  WINTER, CABRANES, and HALL, Circuit Judges.

Interlocutory appeal from a dismissal of Section 1983 claims by various present or former female inmates of New York state prisons, individually and on behalf of a class, for injunctive and declaratory relief, largely for protective measures against sexual abuse and harassment, and a dismissal of individual claims for damages entered by the United States District Court for the Southern District of New York (Kevin T. Duffy, Judge).  We lack jurisdiction over the claims for damages but hold that the class claims for injunctive and declaratory relief are not moot because they fall within the exception for claims capable of repetition, yet evading review.  We vacate the judgment of the district court in part and remand for further proceedings.

DORI LEWIS (Lisa A. Freeman, on the brief), Prisoners' Rights Project Legal Aid Society, New York, New

_____

* The Clerk of the Court is directed to amend the caption as set forth above.

York, and ALISON M. MIKKOR (Maeve O'Connor, John S. Craig, Donna Krouzman, Lauren Sypek on the brief), Debevoise & Plimpton, LLP, New York, New York, for Appellants.

RICHARD O. JACKSON (Andrew M. Cuomo, Attorney General, Barbara D. Underwood, Solicitor General, Benjamin N. Gutman, Deputy Solicitor General, on the brief), Office of the Attorney General, New York, New York, for Supervisory Appellees.

JOSEPH M. LATONA, Buffalo, New York for Appellee Charles Davis.

CHRISTOPHER KENNEDY (David W. Novak, on the brief), Hinman Straub, P.C., Albany, New York, for Appellees Michael Evans and Jeffrey Shawver.

LINDA M. CRONIN (Rocco G. Avallone, on the brief), Cronin & Byczek LLP, Lake Success, New York, for Appellees Rick Larue and Rico Meyers.

Hogan Willig and Diane R. Tiveron, of Counsel, Amherst, New York, for Appellee John E. Gilbert III.

Rachel Meeropol, Center for Constitutional Rights, New York, New York, and Giavanna Shay, Springfield, Massachusetts, for Amici Curiae The National Prison Project of the American Civil Liberties Union Foundation, National Prison Rape Elimination Commissioner, Professor of Law Brenda V. Smith, Stop Prisoner Rape, and Legal Momentum, in support of Appellants.

Joel Landau, James Bogin, Karen Murtagh-Monks, for Amicus Curiae Prisoners' Legal Services of New York, Albany, New York, in support of Appellants.

WINTER, Circuit Judge:

Thirteen present and former female inmates of various New York state prisons appeal from Judge Duffy's dismissal of their class action complaint. The complaint, brought under 42 U.S.C. § 1983, sought declaratory and injunctive relief compelling the Department of Correctional Services ("DOCS") to alter its practices and procedures so as to enhance the protection of the class from sexual assault, abuse, and harassment. The complaint also asserted individual claims for damages. The dismissal was based on the grounds that some of the claims of named plaintiffs were moot and that the remaining named plaintiffs had failed to exhaust available remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). Appellees are individual line officers ("line officer appellees"), various superintendents and supervisors of certain New York State prisons, and DOCS officials ("supervisory appellees").[1]

---

[1] The supervisory appellees include DOCS Superintendents Anginell Andrews, Roberta Coward, Dennis Crowley, Alexandreena Dixon, Elaine Lord, Ronald Moscicki and Melvin Williams; DOCS Deputy Superintendent Donald Wolff; DOCS Director of Personnel Terry Baxter; DOCS Inspector General Richard Roy; DOCS Director of the Sex Crimes Unit of the Inspector General's Office Barbara D. Leon; DOCS Director of the Bureau of Labor Relations Peter Brown; Office of Mental Health Commissioner James Stone; and DOCS Commissioner Glenn S.

A prior panel held that we have appellate jurisdiction over the claims for injunctive and declaratory relief pursuant to 28 U.S.C. § 1292(a)(1).  Amador v. Superintendents of Dep't Corr. Servs., No. 08-2079-pr (2d Cir. June 25, 2008).  We hold that we lack pendent appellate jurisdiction over the damages claims.  We also hold that the claims for injunctive and declaratory relief by appellants who are now free but were in DOCS custody when they brought suit are not moot.  Applying a relation-back theory, we hold that appellants' class claims are capable of repetition, yet evading review.  We conclude that three appellants have exhausted applicable internal prison grievance proceedings while the remaining ten have not.  We vacate the judgment in part and remand for further proceedings.

---

Goord.  Deputy Superintendent Donald Wolff has been sued only for damages. Several of these individuals may no longer be holding the named positions, but their successors are automatically substituted under Federal Rule of Appellate Procedure 43(c)(2).  The line officer appellees include Charles Davis, Michael Evans, John E. Gilbert III, Rick Laru, Rico Meyers, and Jeffrey Shawver. The line officer appellees respond to damages claims by appellants Corilynn Rock, Kristina Muehleisen, Laura Pullen, Nakia Thompson, Tanya Jones, Stacie Calloway, Hope Susoh, Latasha Dockery, and Tonie Coggins.

We do not address appellants' arguments with respect to its claims against the Commissioner of the Office of Mental Health ("OMH").  The supervisory appellees state, without contradiction, that the district court's decision could not have addressed the appellants' claims against the OMH as neither their motion to dismiss nor their opposition to appellants' motion to reconsider purported to address appellants' claims against the OMH. Accordingly, our disposition of this appeal does not encompass this claim and is rendered without prejudice to either parties' arguments with respect to that claim on remand.

BACKGROUND

a) <u>The Complaint</u>

Appellants' complaint seeks redress as individuals and as a class for alleged sexual abuse and harassment in violation of rights secured by the First, Fourth, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. The class is described as "all present and future women prisoners in DOCS custody." Compl. at 67, <u>Amador v. Superintendents of Dep't of Corr. Servs.</u>, No. 03 Civ. 0650(KTD) (GWG) (S.D.N.Y. Oct. 14, 2003). It alleges that the approximately 3000 women prisoners in DOCS custody are at any time subject to a substantial and unreasonable risk of sexual abuse or harassment as a result of DOCS policies and procedures. These policies and practices, alleged to present common issues of law and fact, include the adequacy of DOCS': (i) screening, assigning, training, and supervising male staff, and the staff at large, regarding sexual misconduct; (ii) reporting and investigatory mechanisms for sexual misconduct; and (iii) investigating and responding to complaints of sexual misconduct. On behalf of the class, the complaint sought injunctive and declaratory relief from the supervisory appellees, who were alleged to have been aware of the abuse and to have failed to take appropriate preventive measures. Appellants also asserted individual claims for damages with respect to certain

6

line officers and one DOCS superintendent for their roles in alleged sexual assault, abuse, and harassment of several appellants while they were in DOCS custody.  The conduct alleged ranges from unwelcome touching and invasions of privacy to assault and rape.[2]  More details of the allegations are provided as relevant infra.

b) Procedural History

Each of the appellants was in DOCS custody when the complaint was filed on January 28, 2003.  A motion for class certification was filed six months later, followed by an amended complaint adding the claims of two new inmates, Stephanie Dawson and Shantelle Smith.  Shortly thereafter, appellees filed various motions to dismiss.

On September 13, 2005, the district court granted the motions in part, dismissing five plaintiffs' injunctive claims on the ground that they lacked standing because they had been released from prison before joining the amended complaint.  Two of these plaintiffs, Corilynn Rock and Laura Pullen, now appeal.  The district court also converted defendants' motion to dismiss to one for summary judgment on the limited issue of exhaustion and reserved judgment on the motion for class certification.  See

---

[2] Women entrusted to the custody of DOCS are deemed incapable of consent to sexual advances.  See N.Y. Penal Law § 130.05(3)(e).

<u>Amador v. Superintendents of Dep't of Corr. Servs.</u>, No. 03 Civ. 0650 (KTD)(GWG), 2005 WL 2234050 (S.D.N.Y. Sept. 13, 2005).

On December 4, 2007, the district court granted the motion for summary judgment. See <u>Amador v. Superintendents of Dep't of Corr. Servs.</u>, No. 03 Civ. 0650 (KTD)(GWG), 2007 WL 4326747 (S.D.N.Y. Dec. 4, 2007). It dismissed as moot the injunctive claims of Stephanie Dawson and Shantelle Smith because they had been released from prison while the motion for class certification was pending. The district court then dismissed for failure to exhaust, the claims of Stacie Calloway, Tonie Coggins, Latasha Dockery, Tanya Jones, Kristina Muhleisen, Denise Saffioti, Hope Susoh, and Nakia Thompson. Finally, the district court dismissed the injunctive claims of Shenyell Smith against the supervisory appellees on the ground that she failed to identify any defendant other than the officer who was alleged to have sexually assaulted her. Having dismissed all the claims against the supervisory appellees for mootness or failure to exhaust, the district court concluded that class certification was not warranted. The district court dismissed all claims for damages save those of Shenyell Smith against Officer Delroy Thorpe. <u>Id.</u>

On plaintiffs' motion for reconsideration, the district court amended its order without explanation, to, among other

8

things, reinstate the claims for damages by certain plaintiffs: Lucy Amador against Michael Galbreath and Robert Smith; Bette Jean McDonald against John E. Gilbert III, Mario Pinque and Donald Wolff; Jeanette Perez against Sergeant Smith, Chris Sterling, and Pete Zawislak; Stephanie Dawson against Federick Brenyah; and Shantelle Smith against James Hudson.

This appeal followed.

DISCUSSION

We review a district court's grant of summary judgment <u>de novo</u>, viewing the facts in the light most favorable to the non-moving party. <u>Brownell v. Krom</u>, 446 F.3d 305, 310 (2d Cir. 2006). Whether a plaintiff has exhausted administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), is also a question reviewed <u>de</u> <u>novo</u>, <u>see</u> <u>Johnson v. Rowley</u>, 569 F.3d 40, 44 (2d Cir. 2009), as are questions of mootness. <u>White River Amusement Pub., Inc. v. Town of Hartford</u>, 481 F.3d 163, 167 (2d Cir. 2007); <u>Comer v. Cisneros</u>, 37 F.3d 775, 787 (2d Cir. 1994).

a) <u>Jurisdiction Over The Damages Claims</u>

We have appellate jurisdiction over non-final orders of the district courts' "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). A prior panel concluded that appellate jurisdiction should be exercised over appellants'

9

injunctive claims because the district court's denial of that relief "might have serious, perhaps irreparable consequence" and "can be effectually challenged only by direct appeal" prior to the entry of final judgment.  See Amador, No. 08-2079-pr (2d Cir. June 25, 2008) (quoting Sahu v. Union Carbide Corp., 475 F.3d 465, 467 (2d Cir. 2007)).

Appellants ask that we exercise pendent jurisdiction to review the interlocutory orders dismissing some of their individual claims for damages.  They argue that our review of the district court decision dismissing the injunctive claims entails resolution of the same issue as the dismissed damages claims: whether appellants satisfied the PLRA's exhaustion requirements. See, e.g., Lamar Adver. of Pa., LLC v. Town of Orchard Park, 356 F.3d 365, 371-72 (2d Cir. 2004); Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 576 (2d Cir. 2005).

"[W]here our jurisdiction is properly founded upon the district court's ruling on a preliminary injunction under 28 U.S.C. § 1292(a)(1), our review extends to all matters inextricably bound up with the preliminary injunction."  Lamar Adver. of Pa., LLC, 356 F.3d at 371 (internal quotations omitted and modifications incorporated).  Section 1292(a)(1), however, provides only a "narrowly tailored exception" to the final judgment rule and its "policy against piecemeal appellate

10

review." Cuomo v. Barr, 7 F.3d 17, 19 (2d Cir. 1993). To be "inextricably intertwined" requires, for example, that review of "the otherwise unappealable issue is necessary to ensure meaningful review of the appealable one." Britt v. Garcia, 457 F.3d 264, 273 (2d Cir. 2006) (internal quotation marks omitted). No such necessity exists here. Although prisoners seeking injunctive relief and those seeking damages are each required by the PLRA to exhaust internal grievance procedures, see generally Booth v. Churner, 532 U.S. 731 (2001), the overlap in legal issues is at a very high level of generality. A resolution of the dispute over exhaustion of the damages claims would not necessarily overlap with the resolution concerning exhaustion with regard to injunctive relief. There is, therefore, an insufficient basis for us to justify the application of an exception to an exception, i.e., the exercise of jurisdiction over claims pendent to a claim reviewable only as an exception to the final order rule. Under these circumstances, a measure of self-restraint is desirable, particularly because appellants' proffered justification for pendent jurisdiction does not distinguish them from most litigants seeking both injunctive relief and damages.

11

b) <u>Exhaustion and the Grievance Procedure</u>

The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The purpose of the PLRA is "to reduce the quantity and improve the quality of prisoner suits . . . [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." <u>Abney v. McGinnis</u>, 380 F.3d 663, 667 (2d Cir. 2004) (quoting <u>Porter v. Nussle</u>, 534 U.S. 516, 524-25 (2002)) (modifications in original). Section 1997e(a) requires "proper exhaustion" -- that is, "using all steps that the agency holds out, and doing so properly." <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006) (quoting <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis omitted). This entails both "complet[ing] the administrative review process in accordance with the applicable procedural rules," <u>Woodford</u>, 548 U.S. at 88, and providing the "level of detail necessary in a grievance to comply with the grievance procedures." <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007); <u>see also</u> <u>Espinal v. Goord</u>, 558 F.3d 119, 124 (2d Cir. 2009). Exhaustion is mandatory -- unexhausted claims may not be pursued in federal

court.  See Johnson, 569 F.3d at 45 (citing Jones, 549 U.S. at 211).

We turn now to the various written materials concerning New York's Inmate Grievance Procedure[3] ("IGP") and to various practices that have developed under it.  We discuss the application of the procedure and practices to appellants infra. The IGP defines a grievance as "a complaint about the substance or application of any written or unwritten policy, regulation, procedure or rule of the [DOCS] or any of its program units, or the lack of a policy, regulation, procedure or rule."  N.Y.C.R.R. § 701.2(a) (1994); cf. N.Y.C.R.R. § 701.2(a) (2006) ("[A] complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedure or rule . . . or the lack [thereof]").  The pertinent IGP provides a three step process for the handling of such complaints.

---

[3] First established in 1976 pursuant to New York Corrections Law § 139, the Inmate Grievance Program ("IGP") has undergone a series of revisions and modifications.  See Espinal v. Goord, 558 F.3d 119, 125 (2d Cir. 2009) (noting minor revisions in 2006);  Hemphill v. New York, 380 F.3d 680, 685-86 (2d Cir. 2004) (noting minor revisions in 2004); Patterson v. Smith, 53 N.Y.2d 98, 101-02 (1981).  DOCS' policies and procedures for the IGP are set forth in Part 7 of Title 7 of the New York Compilation of Codes, Rules and Regulations, and are mirrored with minor refinements in DOCS Policy and Procedure Manual Directive Number 4040.  See N.Y. Comp. Codes R. & Regs. tit. 7, ("N.Y.C.R.R.") § 701.1 et seq; New York Department of Correctional Services Directive No. 4040 (1998) ("Directive No. 4040").  The complaint described incidents that occurred between 1999 and 2003.  Accordingly, the relevant regulations are those that were in effect before the 2004 and 2006 revisions.  See Espinal, 558 F.3d at 125 (noting that the relevant regulations were those in effect when the prisoner filed the grievances at issue).

13

To initiate the process, an inmate must file a written complaint with the Inmate Grievance Resolution Committee ("IGRC"), a facility committee composed of inmates and appointed staff members. See N.Y.C.R.R. § 701.4-.5. The complaint must "contain a concise, specific description of the problem and the action requested." N.Y.C.R.R. § 701.7(a)(1)(i) (1998) (now codified as amended at N.Y.C.R.R. § 701.5(a)(2) (2007)). Second, the inmate can appeal an unfavorable IGRC determination to the superintendent of the facility. See N.Y.C.R.R. § 701.7(b) (1998) (now codified as amended and renumbered at N.Y.C.R.R. § 701.5(c) (2007)). Finally, an inmate can appeal an unfavorable superintendent's determination to the Central Office Review Committee ("CORC"). See N.Y.C.R.R. § 701.7(c) (1998) (now codified as amended and renumbered at N.Y.C.R.R. § 701.5(d) (2007)); Directive No. 4040.

This scheme specifically contemplates challenges to DOCS policies and procedures. For example, when a grievance involves "changes in policy," the IGRC is required to submit a recommendation to the superintendent, which, if accepted, can be appealed. N.Y.C.R.R. § 701.7(a)(4)(vi) (1998) (now codified as amended and renumbered at N.Y.C.R.R. § 701.5(b)(3)(ii) (2007)). Of particular importance to the proceeding before us is the provision that only those inmates who are affected by a policy or

14

procedure, or lack thereof, may bring such a challenge. ("An inmate must be personally affected by the policy or issue he/she is grieving, or must show that he/she will be personally affected by that policy or issue unless some relief is granted or changes made. All grievances must be filed in an individual capacity.")

In addition, grievances alleging employee harassment, that is "employee misconduct meant to annoy, intimidate or harm an inmate," see N.Y.C.R.R. § 701.11(a) (1994) (now codified and renumbered at N.Y.C.R.R. § 701.2(e) (2006)), can be processed through an expedited procedure created for the review of such grievances. N.Y.C.R.R. § 701.11(b) (1994) (now codified at N.Y.C.R.R. § 701.8(b)-(h) (2006)); Directive No. 4040, VIII. Pursuant to this expedited procedure, an inmate can report an alleged incident of harassment to the employee's supervisor. Such a report does not, however, "preclude submission of a formal grievance." N.Y.C.R.R. § 701.11(b)(1) (1994) (now codified as amended and renumbered at N.Y.C.R.R. § 701.8(a) (2006)); Directive No. 4040, VIII(A). Any allegation of employee misconduct or harassment is to be given a grievance number, recorded with all other grievances in the grievance log and forwarded to the superintendent for his consideration. N.Y.C.R.R. § 701.11(b)(2) (1994) (now codified as amended and renumbered at N.Y.C.R.R. § 701.8(b) (2006)); Directive No. 4040,

15

VIII(B). If the superintendent (or his or her designee) concludes that the grievance is not a "bona fide case of harassment," the superintendent returns the grievance to the ordinary procedure. N.Y.C.R.R. § 701.11(b)(3) (1994) (now codified as amended and renumbered at N.Y.C.R.R. § 701.8(c) (2006)); Directive No. 4040, VIII(C). If the grievance presents a "bona fide harassment issue," the superintendent can elect to: (i) initiate an in-house investigation, (ii) request an investigation by the Inspector General's Office; or (iii) in the event of criminal activity, request an investigation by the New York State Police. N.Y.C.R.R. § 701.11(b)(4) (now codified as amended and renumbered at N.Y.C.R.R. § 701.8(d) (2006)) Directive No. 4040, VIII(D). An inmate can then appeal the superintendent's determination to the CORC, provided she does so within four days. See N.Y.C.R.R. § 701.11(b)(6)-(7) (1994) (now codified as amended at N.Y.C.R.R. § 701.8(g)-(h) (2006) (now providing an inmate with seven days to appeal to the CORC)); see also Directive No. 4040, VIII(E)-(G).

The class action complaint contains allegations about the actual practices followed under the IGP. Upon arrival at DOCS, it is alleged, female prisoners receive an orientation to DOCS policies and practices. The orientation encourages inmates to lodge sexual misconduct complaints with any official, including

16

the Inspector General ("IG"), as well as DOCS supervisory staff and employees, whether orally or in writing. The IG's Office, and in particular, its Sex Crimes Unit, is alleged by the complaint to be the alternative administrative mechanism DOCS established to handle complaints of staff abuse. The Sex Crimes Unit receives more than 200 complaints of sexual misconduct every year. According to the complaint, it is DOCS' standard practice to refer such complaints to the IG for investigation, whether initiated by formal grievance or informal complaint. DOCS' ensuing response is also alleged to be inadequate by failing to initiate an investigation in a timely manner, failing to adequately investigate and credit inmate complaints, failing to maintain confidentiality, and failing to address any substantiated allegations meaningfully.

According to appellants, inmates at DOCS facilities are provided with various materials regarding DOCS policies and procedures with respect to sexual abuse complaints.[4] For example, at Bedford Hills, the intake facility for all female inmates, see DOCS Directive No. 0046, the Orientation Manual urges female inmates to "report [sexual abuse] . . . to a

---

[4] Not all inmate orientation manuals expressly address sexual misconduct; some simply explicate the IGP. See Albion Correctional Facility Orientation Manual 9-10 (2002); Taconic Correctional Facility Inmate Orientation Manual 62-64 (2000).

supervisor immediately, go to grievance and make a record of the allegation, and write to the Superintendent or any official that you are comfortable approaching.  Write to the Inspector General . . . if you feel more comfortable going directly outside the facility."  Bedford Hills Correctional Facility Inmate Orientation Manual 3 (1999); see also Bedford Hills Correctional Facility Inmate Orientation Manual 3 (2000)(same); Bedford Hills Correctional Facility Inmate Orientation Manual 4 (2003) ("[R]eport [sexual misconduct] to any member of [Bedford Hill's] Executive Team or to Inmate Grievance").  The record demonstrates that the policies conveyed by the inmate orientation manuals to female inmates are reinforced through memoranda and postings at the various prison facilities.  Staff consistently testified that it was DOCS policy to allow women with complaints regarding sexual abuse to report such incidents to a variety of DOCS staff and officials.

The Bedford Hills Orientation Manual also describes the IGP, explaining that a "grievance is a complaint about the substance or application of any written or unwritten policy, regulation, procedure, or rule of the facility or department, or the lack of a policy or procedure."  Bedford Hills Correctional Facility Inmate Orientation Manual 36 (1999); see also Bedford Hills Correctional Facility Inmate Orientation Manual 41 (2000);

18

Bedford Hills Correctional Facility Inmate Orientation Manual 4 (2003).

On this record, it is clear that, under DOCS policies and procedures, an IG investigation of alleged acts of sexual abuse is an integral part of the internal grievance procedure. The record contains testimony and email correspondence indicating that DOCS instructs its staff not to conduct any investigation into sexual abuse and that the grievance procedure operates only as a pass-through to the Sex Crimes Unit. Indeed, women prisoners who did pursue relief through the IGP were told that their complaints had been forwarded to the IG for investigation and appropriate action. All thirteen appellants had their allegations of sexual misconduct investigated by the IG, no matter how initiated.[5]

It is clear, therefore, that the first step in the grievance procedure for an inmate alleging sexual abuse is an IG investigation, whether or not a request for policy/procedure reform is included. Such allegations, when presented to a

---

[5] The district court stated that "[e]ach Plaintiff alleges that she complained to the Inspector General about her sexual abuse." The court found that Tonie Coggins, Stephanie Dawson, and Kristina Muehleisen complained to the immediate supervisor of the alleged abuser. The court also found that Stephanie Dawson, Tanya Jones, Laura Pullen, Corilynn Rock, Denise Saffioti, and Shenyell Smith all grieved to a DOCS official that "they felt comfortable approaching."

19

superintendent, were routinely referred to the IG.  Moreover, an IG determination about abuse of an inmate can be appealed to CORC when the determination is reported to and accepted by the superintendent.

The grievance procedures are further complicated when challenges to DOCS policies concerning sexual misconduct are made.  As noted, the regulations governing the IGP specifically contemplate its use to pursue challenges to existing policies as well as challenges that a policy should be created where one does not exist.  See N.Y.C.R.R. § 701.2(a) (defining grievance as "a complaint about the substance or application of any written or unwritten policy . . . or the lack of a policy").  As noted, appellants' complaint asserts just such a challenge.

However, an inmate may not challenge a policy, or lack thereof, without a showing of concrete injury, N.Y.C.R.R. § 701.3(b), in this case an act of sexual abuse.  Three appellants filed such grievances and appealed through all levels of the IGP procedure:  Shenyell Smith, Stephanie Dawson, and Shantelle Smith.  All three had their grievances investigated by the IG. When the allegation of an act of abuse is combined with a claim for reform of policies and the abuse determination is unfavorable to the inmate, both claims can be pursued on appeal from the IG or superintendent to CORC.  But, it appears on this record that

20

CORC does not entertain the claim for policy change unless the allegation of an act(s) of sexual abuse is upheld. In these three cases, the allegations of acts of sexual abuse were denied. In none of the three cases did any correctional official or tribunal ever mention the grievances' challenge to policies and procedures.

c) Mootness of the Injunctive Claims

Of course, a class action cannot be sustained without a named plaintiff who has standing. Kendall v. Emps. Ret. Plan of Avon Prods., 561 F.3d 112, 118 (2d Cir. 2009) ("In a class action, once standing is established for a named plaintiff, standing is established for the entire class.") The district court held that the claims of those appellants who have been released are moot and that the relation-back doctrine does not preserve those claims for judicial review. Because the claims of all plaintiffs were then dismissed for either mootness or a failure to exhaust, the district court stated "[t]here is no need to grant Plaintiffs' motion for class certification, which is hereby denied." Amador, 2007 WL 4326747 at *9.

We conclude that the relation-back doctrine applies to the claims of the plaintiffs who have been released and preserves their claims for adjudication for purposes of a class action.

The standing requirement winnows out disputes that would be inappropriate for judicial resolution for lack of three constitutionally required elements:  (i) an injury in fact (ii) that is fairly traceable to the defendant and (iii) that is likely to be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); McCormick ex rel. McCormick v. School Dist. of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004).  Similarly, the mootness doctrine ensures that the occasion for judicial resolution established by standing persists throughout the life of a lawsuit.  See Comer, 37 F.3d at 798.  Consequently, in the usual case, if the basis for the claim has been rectified or if the plaintiff is no longer subject to the challenged conduct, the claim is moot.  See Armstrong v. Ward, 529 F.2d 1132, 1135 (2d Cir. 1976).

The relation-back doctrine, however, has unique application in the class action context, preserving the claims of some named plaintiffs for class certification purposes that might well be moot if asserted only as individual claims.  For example, in Gerstein v. Pugh, a class challenged Florida's practice of pre-trial detention without a probable cause hearing.  420 U.S. 103 (1975).  Although the named class representatives had been convicted after the district court's certification of the class and before the court was able to pass on the claims, the Court

22

held the case was not moot because it fell within "a narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class."  420 U.S. at 110 n.11 (citing Sosna v. Iowa, 419 U.S. 393 (1975)).  The Court reasoned that the issue was unlikely to be resolved before a plaintiff was convicted or released.  Id.  An individual could, therefore, suffer repeated deprivations under the challenged practice, and it was certain that a continuing class of similarly situated persons would suffer the constitutional harm alleged.  Id.

In both Sosna and Gerstein, the mootness of the named representative's claim arose after certification of a class. Each decision noted that the usual case required a live controversy at the time of the filing of the complaint and the class certification.  Sosna, 419 U.S. at 398, 402; Gerstein, 420 U.S. at 110 n.11.  Sosna, however, recognized that in certain cases, the claims of the named plaintiffs might become moot before the district court had ruled on a certification motion: "In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."  419 U.S. at 402 n.11.

23

We have applied the relation-back theory to recipients of public assistance alleging that action on their applications for public assistance was unlawfully delayed by the state. See Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993). In that decision, we concluded that because the state would almost always process a delayed application before relief could be obtained through litigation and some of the appellants alleged that they expected to need public assistance in the future, the claims were not mooted by their receipt of benefits after the filing of the complaint. Id. at 938-39.

We have also applied the relation-back doctrine to class claims of racial discrimination and segregation in public housing in New York by low-income minority individuals. Comer, 37 F.3d at 797-801. We held that, because of the particular combination of a highly fluid public housing population, whose claims were "acutely susceptible to mootness," and a two-year delay before the district court denied class certification, the class certification, which was granted on appeal, related back to the complaint. Id.

Whether claims are inherently transitory is an inquiry that must be made with reference to the claims of the class as a whole as opposed to any one individual claim for relief. See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 399-400 (1980);

Gerstein, 420 U.S. at 110 n.11. According to the supervisory appellees, there is nothing inherently transitory about appellants' claims because inmates serve a range of terms of imprisonment. Thus, they argue, while some inmates may be released before their claims can be adjudicated, others will remain incarcerated long enough for courts to adjudicate their claims. We disagree.

We have previously observed that "a significant characteristic" of claims subject to the "capable of repetition, yet evading review" exception is that the mootness resulted from "a factor closely related to the essence of the claim." Swan v. Stoneman, 635 F.2d 97, 102 n.6 (2d Cir. 1980). As such, these claims "involve[] issues that [are] likely to evade review, no matter who prosecute[s] them." Id. Although a close issue, we conclude that this exception applies.

This action is brought on behalf of all women inmates in DOCS custody, alleging constitutionally defective policies and procedures in failing to protect female inmates from sexual harassment, abuse, and assault by male staff. While the entire class may be exposed to the risks caused by the constitutionally defective policies and procedures alleged, as noted, the grievance procedure may be triggered only by an inmate who has been a victim of sexual misconduct. Because the number of

inmates subjected to acts of misconduct can be a small fraction of the total inmates at risk, the odds of an inmate being able to complete the grievance procedure and litigate a class action while still incarcerated are rather small. All thirteen appellants were in DOCS custody when they commenced the action; only four remained incarcerated when the district court rendered its September 13, 2005 decision.[6] Four appellants have been released and subsequently reincarcerated during the course of these proceedings,[7] and of these, only two, remained in custody following the filing of the notice of appeal.[8]

Accordingly, we conclude that it was error for the district court to dismiss as moot the claims of the individual plaintiffs who had been released from prison after the filing of the amended complaint. See Wilkerson v. Bowen, 828 F.2d 117, 121 (3d Cir. 1987) ("It would seem to us that the principle espoused in Geraghty is applicable whether the particular claim of the proposed class plaintiff is resolved while a class certification motion is pending in the district court (as in the present case)

---

[6] Stacie Calloway, Kristina Muehleisen, Nakia Thompson and Shenyell Smith were incarcerated at that time. [A 6952, 6954, 6955, 6956]

[7] The four appellants are Corilynn Rock, Stacie Calloway, Tanya Jones and Denise Saffioti.

[8] The two appellants are Corilynn Rock and Denise Saffioti.

26

or while an appeal from denial of a class certification motion is pending in the court of appeals (as in <u>Geraghty</u>). In neither event is the plaintiff automatically disqualified from being a class representative . . . ."); <u>Wade v. Kirkland</u>, 118 F.3d 667, 670 (9th Cir. 1997) (holding that, in light of the potential for a prisoner's claim to be "inherently transitory," the action could qualify for an exception to mootness, and if so found on remand, the district court could validly certify a class, "since the 'relation back' doctrine will relate to [plaintiff's] standing at the outset of the case").

d) <u>Exhaustion by Appellants</u>

Having held that the relation-back theory applies, we now address whether any of the individual plaintiffs have properly exhausted internal prison remedies.

Of the thirteen appellants, nine made internal complaints, investigated by the IG, that sought redress only for the alleged actions of the particular officer and did not seek a change in policies or procedures.[9] These nine have, therefore, not exhausted their internal remedies with regard to the complaint in the present action.

Another appellant, Stacie Calloway, complained about a

_____

[9] The nine individuals are Nakia Thompson, Hope Susoh, Denise Saffioti, Corilynn Rock, Laura Pullen, Kristina Muehleisen, Latasha Dockery, and Tonie Coggins.

27

sexual assault.  However, her affidavit also states that she informed the IG that sexual abuse was a problem affecting other inmates and that no one kept track of what the officers were doing.  We believe that this complaint sufficiently raises systemic issues relating to policies and procedures regarding the prevention of sexual abuse.  To be sure, she did not ask for the precise relief sought in this action, but she adequately alerted the authorities as to her claim of systemic issues.  However, Calloway did not appeal to CORC, which is the final step in the grievance procedure for raising issues regarding DOCS polices. The issue, then, is whether her failure to exhaust should be excused.

In Hemphill v. New York, we established a three-part inquiry to guide the analysis of whether a plaintiff has met the requirements of Section 1997e(a) of the PLRA.  380 F.3d at 686. The first part, which is not an issue here, is a determination that administrative remedies were in fact available to the prisoner.  Id. at 686-88.  The second part considers whether defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether defendants' own actions inhibiting the inmate's exhaustion of remedies estops one or more of the defendants from raising the exhaustion defense. Id. at 686, 688-89.  The third part requires consideration of

28

whether, if the requirements of step two were not met, special circumstances excuse the plaintiff's failure to pursue or exhaust administrative remedies. Id. at 686, 689-91. If any of the three parts is satisfied, the prisoner is deemed to have exhausted internal procedures for purposes of the PLRA.

Subsequent decisions have questioned the continued viability of this framework following the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81 (2006). In Woodford the Court addressed whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84. The Court resolved the question in the negative, explaining that PLRA requires "proper exhaustion," that is "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90 (emphasis omitted). We have questioned whether, in light of Woodford, the doctrines of estoppel and special circumstances survived. See Macias v. Zenk, 495 F.3d 37, 43 n.1 (2d Cir. 2007) ("[W]e need not decide what effect Woodford has on Hemphill's holding that where administrative procedures are confusing a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter.") (internal quotations omitted); Ruggiero v. County of Orange, 467

29

F.3d 170, 176 (2d Cir. 2006) (noting that "[w]e need not determine what effect Woodford has on our case law in this area" because the prisoner's estoppel and special circumstances arguments nonetheless failed).

We too decline to reach the issue, concluding that, even under pre-Woodford caselaw, Calloway has failed to establish that defendants are estopped from raising exhaustion as a defense or that special circumstances excuse her failure to exhaust.

A prisoner may invoke the doctrine of estoppel when "defendants took affirmative action to prevent him from availing himself of grievance procedures." Ruggiero, 467 F.3d at 178. Prior cases have held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action. See, e.g., Hemphill, 380 F.3d at 688; Ziemba v. Wezner, 366 F.3d 161, 162 (2d Cir. 2004). No such conduct prevented Calloway from appealing to CORC. Nor were there special circumstances relieving Calloway of the obligation to exhaust the IGP procedures. It is clear that challenges to DOCS policies or lack thereof, the subject matter of this lawsuit -- where coupled with a claim of sexual abuse -- must be pursued through the CORC level. While this is a somewhat complex scheme, it hardly

constitutes special circumstances.  Calloway's grievance was thus not exhausted.

Two other appellants, whose complaints were dismissed as moot but to which we have applied the relation-back doctrine, Shantelle Smith and Sheynell Smith, alleged both assaults and a failure to protect and completed the grievance procedure.

Shenyell Smith wrote a letter addressed "To Whom It May Concern" that was logged as a grievance on January 3, 2002.  The letter alleged that she had been harassed for a period of three months, retaliated against, and sexually assaulted by an officer.  With respect to the relief sought, she stated, "This officer is still working on this unit and its not right.  I feel that [the officer] should seek counseling [and be] removed . . . , fired and any other [precaution] that is there."  The superintendent responded that "[a] significant portion of this complaint has to do with issues turned over to the Inspector General's Office for investigation in accordance with Departmental procedures.  Grievance denied in that no basis was found for your allegations."  She appealed the grievance.  On February 20, 2002, CORC denied it, stating, "Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied.  CORC upholds the determination of the Superintendent for the reasons stated."

Shantelle Smith filed a grievance with the IGRC on July 10, 2003, alleging a sexual assault by an officer. With respect to corrective action, she stated, "I am seeking monetary damages for the reason that the State had a duty to protect me and failed to do so, thus rendering their misactions as a 'Failure to Protect', a most serious dereliction of their duty to provide for my care, custody and control." On July 11, 2003, the superintendent responded, neither granting nor denying the grievance, stating only, "Your grievance has been forwarded to the Inspector General's office for further investigation." Shantelle appealed, and on September 10, 2003, CORC denied the grievance, stating, "CORC upholds the determination of the Superintendent for the reasons stated. CORC notes that the grievant's allegation of sexual misconduct . . . has been forwarded to the appropriate Central Office personnel for investigation. Any action deemed necessary and appropriate will be taken as a result of that investigation." That disposition states that any final action would be taken by the IG. No favorable action was taken by the IG, and we deem the grievance procedure exhausted.[10]

Each of these inmates completed the IGP procedure. The issue is whether a claim of a failure to protect is sufficient

[10] CORC's response to Shenyell Smith's and Shantelle Smith's appeals was identical to its response to Stephanie Dawson's appeal, discussed infra. Appellees agree that Dawson exhausted the grievance procedure.

exhaustion with regard to litigation seeking systemic relief. The issue, in our view, is whether a reasonable corrections official would recognize a complaint alleging a failure to protect a female inmate from a sexual assault by a male officer as raising issues regarding DOCS policies and procedures. We believe that it would. To be sure, a "grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." Brownell, 446 F.3d at 310. However, a failure to protect involves conduct by officials superior to the officer accused of the misconduct and suggests the need for policy and procedural reform. While the complaint asks for a result -- protection -- rather than specifying the means used to reach that result, the need for the result is clearly articulated and the appropriate means are far more within the expertise of DOCS than the individual prisoner.

A fourth appellant, Stephanie Dawson, clearly alleged an act of sexual misconduct, clearly sought systemic reform along the lines of the class action complaint, and clearly exhausted the IGP procedure. Her claim was dismissed as moot by the district court but is now revived by application of the relation-back doctrine.

Dawson filed her grievance with the IGRC on February 25, 2003. She alleged that she was raped by an officer at the prison

33

where she was incarcerated. In describing her grievance, she stated, "Taconic didn't provide protection from Correctional Officer sexual assault on me." Dawson requested various relief including: (i) "For DOCS to train and assign and supervise staff so that [she would] not again [be] subjected to this kind of abuse"; (ii) "For DOCS to conduct a full and complete investigation"; (iii) "That [the officer] should be disciplined"; and (iv) "That [she] continue to receive mental health counseling." In response, the superintendent concluded that "an investigation by the DOCS Inspector General's Office is in progress." When Dawson sought to appeal, she was advised that an appeal would be "redundant." Dawson nonetheless pressed her appeal, and CORC upheld the superintendent's decision. CORC noted that "the complaint has been forwarded to the appropriate Department personnel for investigation. Any action deemed necessary will be taken as a result of the investigation."

The parties agree that Dawson's grievance was both procedurally and substantively exhausted. Because Dawson's role as plaintiff is not mooted by her release for reasons stated supra, she is entitled to pursue a role as class representative.

Our conclusion that the district court erred when it failed to relate those claims it deemed moot back to the filing of the complaint does not automatically establish that the three

34

appellants affected, Stephanie Dawson, Shantelle Smith, and Sheynell Smith, are entitled to litigate the interests of the class they seek to represent. See Sosna, 419 U.S. at 403 ("This conclusion does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.'" (citing Fed. R. Civ. P. 23(a))). In a separate proceeding, a previous panel of this court denied appellants' application for leave to appeal the denial of class certification by the district court. Accordingly, the propriety of class certification is not before us.

CONCLUSION

We dismiss the damages claims for lack of jurisdiction. We vacate the judgment of the district court with respect to the claims designated in this opinion, and remand for further proceedings consistent with the opinion.