22-585-pr
Edwards v. Arocho

# United States Court of Appeals
# for the Second Circuit

August Term, 2023

(Argued: September 11, 2023     Decided: December 30, 2024)

Docket No. 22-585-pr

———————————————————

CLINT EDWARDS,

*Plaintiff-Appellant,*

v.

CHRISTOPHER AROCHO, Correction Officer,

*Defendant-Appellee,*

WESTCHESTER COUNTY, DEPARTMENT OF CORRECTIONS,
ERIC MIDDLETON, Assistant Warden, Correction Captain
CHRISTOPHER ROBERTS, NATASHA VANLIEROP, Captain, C.O.
Sergeant KEVIN GRANT, C.O. Sergeant IVAN LOPEZ,

*Defendants.*[*]

———————————————————

Before:

RAGGI, LOHIER, and CARNEY, *Circuit Judges.*

---

[*] The Clerk of Court is directed to amend the official caption to conform with the above.

Clint Edwards asserts several violations of his Fourteenth Amendment rights as a pretrial detainee in a Westchester County Department of Corrections ("WCDOC") jail.  On appeal, we focus on three of his claims.  First, Edwards claims that a WCDOC corrections officer, Christopher Arocho, failed to protect him in the jail and instead incited other inmates to attack him.  Second, he alleges that several of the individual WCDOC Defendants subjected him to severely unsanitary and unhealthy conditions of confinement in administrative segregation.  Finally, Edwards claims that placing him in administrative segregation without notice or an opportunity to be heard violated his procedural due process rights.  The United States District Court for the Southern District of New York (Briccetti, *J.*) dismissed Edwards's conditions of confinement and procedural due process claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  The District Court then also granted summary judgment in Arocho's favor on the failure to protect claim after determining that Edwards had not followed WCDOC's grievance procedures as to that claim and thus failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Edwards appeals both rulings.  We conclude that Edwards has adequately stated conditions of confinement and procedural due process claims under the Fourteenth Amendment.  We also conclude that Edwards has raised a factual dispute as to whether he exhausted his administrative remedies.  **VACATED AND REMANDED**.

MICHAEL ANTZOULIS, NATHAN VERRILLI (Jonathan Romberg, Carmen I. Abrazado, Elisabeth Neylan, *on the brief*), Seton Hall University School of Law, Newark, NJ *for Plaintiff-Appellant*.[1]

SHAWNA C. MACLEOD, *for* John M. Nonna, Westchester County Attorney, White Plains, NY (David H. Chen, Bleakley Platt & Schmidt, LLP, White Plains, NY, *on the brief*) *for Defendant-Appellee*.

---

[1] Mr. Antzoulis, Mr. Verrilli, Ms. Abrazado, and Ms. Neylan appear pursuant to Local Rule 46.1(e).

LOHIER, *Circuit Judge*:

Clint Edwards filed this *pro se* lawsuit under 42 U.S.C. § 1983 asserting

several violations of his Fourteenth Amendment rights as a pretrial detainee by

the Westchester County Department of Corrections ("WCDOC") and various

WCDOC officials and employees. On appeal, we focus on three of his claims.

First, Edwards claims that a corrections officer, Christopher Arocho, failed to

protect him in the jail and instead actively incited other inmates to attack him.

Second, Edwards alleges that several of the individual WCDOC Defendants

subjected him to severely unsanitary and unhealthy conditions of confinement.

Finally, Edwards claims a deprivation of his procedural due process rights

arising from his placement in administrative segregation without notice or an

opportunity to be heard.

The District Court (Briccetti, *J.*) dismissed Edwards's conditions of

confinement and procedural due process claims at the motion to dismiss stage

for failure to state a claim. After discovery, the District Court granted summary

judgment in Arocho's favor on Edwards's remaining failure to protect claim on

the ground that Edwards failed to exhaust his administrative remedies with

respect to that claim.

We **VACATE** the judgment of the District Court and **REMAND** for further proceedings.

## BACKGROUND

This appeal arises from Clint Edwards's detention in WCDOC's Old Jail in 2017 and 2018 while awaiting trial on charges that included engaging in certain sexual conduct with persons deemed incapable of consent, in violation of New York Penal Law § 130.45 (repealed 2024), and coercing and enticing a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b).

Two events in the Old Jail spurred this litigation.[2]

---

[2] The parties also discuss a third incident that preceded the other two. On June 16, 2017, Edwards was placed in protective custody at his request. While in protective custody, Edwards stayed in 2-East Witness Room #1 ("2-East"), a cell that lacked a desk, table, shelf, and storage bin. After Edwards submitted a grievance to WCDOC Captain Christopher Roberts, Sergeant Kevin Grant informed Edwards that he had been in administrative segregation since his transfer to 2-East the prior month and explained that Edwards could not invoke the grievance process while in segregation. Edwards asserts that he never received paperwork informing him that he was in administrative segregation. When Edwards later submitted another grievance, WCDOC's grievance coordinator responded that Edwards in fact "was never placed on administrative segregation," but was instead housed in protective custody in a different part of the facility. Joint App'x 39. Edwards left protective custody at his own request on March 13, 2018, after Assistant Warden Eric Middleton allegedly told Edwards that he would "not get out of this room," and would "surely rot in this room," referring to 2-East. Joint App'x 95–96. Because these events are not at issue on this appeal, we do not discuss them further.

4

First, on May 25, 2018, at around 3:00 p.m., Officer Christopher Arocho informed Edwards that he was scheduled to review materials in his federal criminal case. Edwards was eating and refused to rise to accompany Arocho until he had finished his meal. Edwards complained to a sergeant, who permitted him to finish his meal first. Edwards alleges that as he left to review the materials, Arocho told him that "he [Arocho] got something for me when I get back." Joint App'x 228. Arocho's revenge, Edwards asserts, came swiftly. Later that evening at around 7:00 p.m., another detainee, Paul Small, assaulted Edwards without apparent provocation. According to Edwards, Arocho had instigated the attack by telling Small that Arocho was charged with sex offenses. A third detainee, known to Edwards only by his nickname, "Ice," confirmed to Edwards that Arocho had disclosed Edwards's charged offenses to Small. Ice also informed Edwards that a fourth detainee, Kentrell Hill, had called someone outside of the jail shortly before the assault to verify that Edwards was charged with a sex offense.

In the course of this litigation, Edwards would obtain recordings of two phone calls that Hill made in the hour before the Small assault. During the first call, Hill is recorded asking a woman to check online that Edwards was charged

5

with sex offenses, and she confirms to Hill that Edwards was charged with, among other crimes, "rape in the second [degree]." In the second recorded call, the woman states, "Y'all don't know if he did that," to which Hill responds, "the C.O. came today, he just stepped out of nowhere" and said that "Edwards was a rapist." Recounting other complaints about Edwards, Hill confides, "Babe, I ain't gonna lie, I was gonna snuff him anyway," repeating that, "this guy raped a little kid." Also in the second recorded call, Hill can be heard talking to other people near him and repeating that Edwards had been charged with rape.

The second event relates to the conditions of Edwards's confinement, and to places as much as to people. It begins with Edwards's removal from the general population and placement on June 26, 2018 in 3-East Witness Room #1 ("3-East"), a wing of the Old Jail, allegedly on Assistant Warden Eric Middleton's orders. Middleton informed Edwards that the move had been prompted by "security" concerns and that a "confidential" source had alleged that Edwards was "extorting pre-trial detainees, hoarding the television remote control from pre-trial detainees, commandeering the telephone from pre-trial detainees, secreting the housing unit board games from pre-trial detainees,[] and controlling the housing unit fan pre-trial detainees were accustomed to using."

6

Joint App'x 97.  Edwards disputed the confidential source's allegations and claimed they could be disproved by the video recordings.  But Edwards asserts that Middleton "brushed me off without any regard to what my responses were . . . and . . . stated to me that I will now suffer in this 3-East Witness Room #1 until I leave and I should know how to get off of this."  Joint App'x 98.

Edwards alleges that he was then immediately placed on administrative segregation and that, the next day, June 27, 2018, an unidentified WCDOC block officer told him that Captain Natasha VanLierop had imposed the restrictions on his movement in a posted memorandum.  Three days later, VanLierop allegedly confirmed to Edwards that she had authorized the restrictions based on a higher ranking WCDOC officer's orders that Edwards be placed in administrative segregation in 3-East.  But Edwards elsewhere alleges that WCDOC failed to properly notify him that he would be placed on administrative segregation in 3-East until approximately two months later, on August 29, 2018.

Edwards alleges that conditions in 3-East were, to say the least, poor.  Among other deficiencies, Edwards's cell lacked hot water, was extremely hot without a fan or centralized air conditioning, lacked a working ventilation system, was infested with bugs and mice, and was covered in black mold.  The

7

toilet leaked when flushed. Edwards says that he complained about these deplorable conditions to "officers making their rounds, medical and mental health staff, among others." Joint App'x 104. But, he claims, "no one did anything to help except telling me to keep crying like a spoiled baby to . . . [Defendants] Middleton and . . . VanLierop who, in turn, personally knew what all I was being subjected to while in that disgusting 3-East Witness Room #1." Joint App'x 104.

Both of the alleged events described above — the physical assault and placement in 3-East — prompted Edwards to submit several grievances to WCDOC. First, on the day of the assault, May 25, 2018, Edwards submitted an incident report asserting under oath that his assailant, Small, said during the assault that Small had heard from a corrections officer about the offense conduct that had landed Edwards in jail. In his memorandum of law filed in opposition to the Defendants' summary judgment motion, Edwards states that "[a] few days after the [assault]," he attempted to hand a grievance to an unnamed sergeant, only to have the sergeant tell him that he could not file a grievance because of the jail's ongoing investigation into the assault. Joint App'x 230. "Around the end of

June 2018," the same sergeant told him the investigation into the assault had concluded. Joint App'x 230.

Edwards filed his second grievance related to the May 25 assault with Sergeant Hollis on June 28, 2018, two days after Edwards was placed in 3-East. The June 28 grievance complained about both the physical restrictions on Edwards as well as his placement in 3-East. Edwards insists that Sergeant Hollis never returned this grievance.[3] Only weeks later did Edwards learn that the June 28 grievance was denied as overly broad.

On July 8, Edwards submitted a third grievance focusing on the conditions in 3-East and his resulting health problems. This grievance was substantially denied by Sergeant Lopez. On July 27, Edwards submitted three additional grievances in an attempt to fix the overbreadth deficiency identified with respect to his June 28 grievance. Most relevant here, one of the July 27 grievances specifically mentioned Arocho's alleged role in the May 25 assault on Edwards,

_____

[3] Edwards claims that when he inquired about the status of his June 28 grievance, Sergeant Hollis "said he gave it to Captain Roberts," Joint App'x 230, and Hollis could not return the June 28 grievance to Edwards because Hollis was "waiting for Capt. Roberts to return the grievance back to him," Joint App'x 74–75. Three official WCDOC memoranda dated June 28, 2018, state that grievances were being returned to Edwards. But these memoranda include grievance numbers that were assigned to grievances submitted in July. An August 29, 2018 memorandum to Edwards also states that the sergeant to whom Edwards handed the June 28 grievance had handed it back to him.

as follows: "On 5-25, I got ass[a]ulted by an i[n]mate while on GP because C.O. Arocho told another inmate a lie of why I was here." Joint App'x 60.

All three of the July 27 grievances were denied as untimely because they were submitted more than two days after the June 28 grievance had been denied. Edwards appealed the denials without success. He then filed another grievance on July 30 complaining about a physical restriction. That grievance was also denied. On August 7 Edwards filed yet another grievance based on the denial of his three July 27 grievances, claiming that Sergeant Hollis's failure to return his June 28 grievance should excuse his untimely filings of July 27. The August 7 grievance was likewise denied.

Edwards then appealed that denial. On appeal, his grievance was "denied in part" on the ground that Edwards failed to resubmit the June 28 grievance within the required timeframe. Joint App'x 78. His grievance was "upheld in part" on the ground that WCDOC employees "did not properly process the grievance which would have provided for documented tracking." Joint App'x 78. The appeal decision acknowledged that Edwards "should have been provided with written notification of his [Administrative Segregation] conditions or restrictions" and advised, "[t]hat has been corrected." Joint App'x 78.

On February 11, 2019, Edwards filed a *pro se* complaint against Westchester County, WCDOC, Middleton, VanLierop, Arocho, and Captain Christopher Roberts. The District Court *sua sponte* dismissed WCDOC as a Defendant, and the remaining Defendants moved to dismiss the complaint. Edwards thereafter filed an amended complaint, adding two new Defendants, Sergeants Kevin Grant and Ivan Lopez, and removing WCDOC as a Defendant.

The Defendants moved to dismiss the amended complaint for failure to exhaust administrative remedies and, under Rule 12(b)(6), for failure to state a claim. The District Court granted the motion in part and denied it in part. It declined to dismiss for failure to exhaust administrative remedies given the early stage of litigation and held that Edwards had plausibly stated a failure to protect claim against Arocho. But it also held that Edwards had not plausibly stated either a conditions of confinement claim or a due process claim against the remaining individual Defendants. Lastly, the District Court denied Edwards's request for leave to amend the complaint as to the dismissed claims on the ground that amendment would be futile. *Edwards v. Middleton*, No. 19-CV-1362, 2020 WL 4474682, at *4–8 (S.D.N.Y. Aug. 3, 2020).

11

The parties proceeded to discovery on the remaining failure to protect claim against Arocho. Edwards, still *pro se*,[4] obtained, among other evidence, redacted versions of video footage related to the assault, as well as recordings of the two prison telephone calls during which detainee Hill discussed Edwards's charges. At the close of discovery, Edwards and Arocho each moved for summary judgment, with Edwards relying especially on various unsworn statements to oppose Arocho's motion. The District Court granted summary judgment in favor of Arocho after concluding that Edwards failed to exhaust administrative remedies as to the failure to protect claim. Having dismissed that claim as unexhausted, the District Court declined to address the merits. *Edwards v. Arocho*, No. 19-CV-1362, 2022 WL 294067, at *5 & n.6 (S.D.N.Y. Feb. 1, 2022).

This appeal followed.

---

[4] Edwards moved for appointment of counsel, which the District Court denied in December 2020. Later, on appeal, Edwards moved for *in forma pauperis* status, which this Court granted. This Court also subsequently appointed pro bono counsel to represent Edwards. We thank pro bono counsel for undertaking this assignment.

## DISCUSSION

## I

We begin with the District Court's grant of summary judgment dismissing Edwards's failure to protect claim against Arocho.

"Summary judgment is proper only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Doyle v. U.S. Dep't of Homeland Security*, 959 F.3d 72, 76 (2d Cir. 2020) (quotation marks omitted). "We review de novo the [D]istrict [C]ourt's grant of summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [his] favor." *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 68 (2d Cir. 2023) (quotation marks omitted).

We conclude that genuine disputes of material fact preclude summary judgment in Arocho's favor on exhaustion grounds. We also decline Arocho's invitation to affirm the judgment on the merits.

## A

The Prison Litigation Reform Act (PLRA) extends to a claim that a correctional facility failed to protect an inmate. *See Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012); *Amador v. Andrews*, 655 F.3d 89, 104 (2d Cir. 2011). The

statute provides that any "prisoner confined in any jail" must exhaust "such administrative remedies as are available" before bringing an action "with respect to prison conditions." 42 U.S.C. § 1997e(a). "[A] court may not excuse a failure to exhaust" administrative remedies. *Ross v. Blake*, 578 U.S. 632, 639 (2016).

But it is also true that "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust *available* remedies, but need not exhaust unavailable ones." *Id.* at 642 (emphasis added). "[T]he test for deciding whether the ordinary grievance procedures were available" is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente v. County of Suffolk*, 980 F.3d 284, 311–12 (2d Cir. 2020) (quotation marks omitted). A grievance procedure is not "available" if "it operates as a simple dead end," as when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," or the procedure itself is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 578 U.S. at 643–44. To be clear, a grievance "process requires only 'the *possibility* of some relief'" in order "[t]o constitute an 'available' remedy."

14

*Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State*

*Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021) (quoting *Ross*, 578

U.S. at 643). For this reason, we have explained, "[t]he bar for the availability of

remedies . . . is low." *Id.*

Under New York law, county jails (including the WCDOC jail) must

permit detainees to file a grievance and, if the grievance is denied, to appeal the

denial first to the chief administrative officer of the facility and then to the

Citizens' Policy and Complaint Review Council ("CPCRC") of the New York

State Commission of Correction. N.Y. Comp. Codes R. & Regs. tit. 9,

§§ 7032.4(a), (j), 7032.5. State law does not specify what information a grievance

should contain. This raises a question for courts tasked with determining

whether a plaintiff has exhausted administrative remedies as to a particular

claim: If the State never specifies what a grievant must say about the claim, then

how can a court determine that the grievant has exhausted his administrative

remedies with respect to that claim?

The PLRA provides the answer: a grievance need only "alert[] the prison

to the nature of the wrong for which redress is sought." *Johnson v. Testman*, 380

F.3d 691, 697 (2d Cir. 2004) (quotation marks omitted). A grievance is thus

similar to "notice pleading" in that it need only "object intelligibly to some asserted shortcoming," *id.* (quotation marks omitted), and "adequately describe[] the alleged misconduct," *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). The grievant is under no obligation to "lay out the facts, articulate legal theories, or demand particular relief." *Johnson*, 380 F.3d at 697 (quotation marks omitted).

As for timing, section 7032.4(d) of Title 9 of the New York Codes, Rules and Regulations lists the minimum standards and regulations for grievance programs in local jails such as WCDOC and provides that "[a]n inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance." An inmate who fails to do so fails to exhaust administrative remedies.

Edwards failed to file a formal grievance within five days of the assault against him, as required under New York law. No one disputes this. He asks us to excuse his failure, however, based on his *attempt* to file the grievance within five days of the assault and the evidence of a WCDOC sergeant's refusal to accept the grievance while the investigation into the assault was pending. The sergeant's refusal to accept the grievance, Edwards contends, rendered the grievance procedure "unavailable" during the relevant five-day period.

16

In resolving the summary judgment motion, the District Court accepted as true Edwards's unsworn statement, in his *pro se* summary judgment brief, that an unnamed WCDOC sergeant informed Edwards that he could not pursue his grievance and avail himself of the process due to the ongoing investigation. We will not disturb the District Court's decision to consider and accept as true Edwards's unsworn statement under these circumstances. This is especially appropriate because the District Court apparently did not consider Edwards's declaration, submitted with his *pro se* summary judgment brief and docketed on July 9, 2021, in which he declared "under penalty of perjury that the foregoing is true and correct" and wrote, "I make this declaration in support of my [opposition to] summary judgment." Dist. Ct. Dkt. No. 124 (signed and dated July 7, 2021).[5]

On appeal, the parties likewise do not reference this declaration even though it complied with 28 U.S.C. § 1746, under which an unsworn declaration may be submitted to a court "with like force and effect" as a sworn declaration where it is "subscribed by [the declarant], as true under penalty of perjury, and

---

[5] Edwards's declaration was broadly worded, stating that "*everything* foregoing is true and correct." Dist. Ct. Dkt. No. 124 (emphasis added). We liberally construe this *pro se* submission to support the factual allegations contained in Edwards's entire summary judgment brief.

dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" 28 U.S.C. § 1746; *see also* Fed. R. Civ. P. 56(c) Advisory Committee's Notes to 2010 amendment ("28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."); *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) (unsworn letter that substantially complied with 28 U.S.C. § 1746 sufficient to preclude summary judgment). Because Edwards's unsworn declaration complied with 28 U.S.C. § 1746, and because his assertions are consistent with the allegations in his complaint, we treat Edwards's factual assertions in his summary judgment brief, including his assertion that the grievance procedure was initially unavailable to him, as admissible evidence in support of his claim.

Accepting Edwards's statement as true, we think that "a similarly situated individual of ordinary firmness" who is informed by a corrections officer that a grievance procedure or potential remedy is unavailable would reasonably deem the procedure to be unavailable. *Lucente*, 980 F.3d at 311–12 (quotation marks omitted). We therefore conclude that Edwards has at least placed in genuine

18

dispute whether the grievance procedure was unavailable during the relevant five-day period and thus whether he was excused from the PLRA's requirement that he exhaust administrative remedies during that period.

This brings us to Edwards's grievance of June 28, 2018, which Edwards submitted to Sergeant Hollis immediately after learning that WCDOC's investigation into his assault was complete, rendering the grievance procedure "available" at that time. Recall that WCDOC quickly denied the June 28 grievance as overbroad. The department's rules gave Edwards only two days to file an amended grievance correcting the deficiency. Arocho contends that, even if we considered the grievance process unavailable during the five-day period after the assault, Edwards surely failed to meet the two-day deadline to correct the "too broad" grievance that he *did* file.

In opposing summary judgment, Edwards asserted that he first learned that his June 28 grievance had been denied as overbroad approximately a month after submitting it, and that he then "refile[d]" an amended grievance immediately thereafter, on July 27, 2018. Joint App'x 231. Because Edwards declared under penalty of perjury, in compliance with 28 U.S.C. § 1746, that his statements in his summary judgment brief were true and correct, Edwards's

19

assertion that he satisfied the two-day deadline to refile his previously rejected grievance constitutes admissible evidence and thereby creates a genuine factual dispute as to that issue.

There remains the separate question whether Edwards's July 27 grievance relating to Arocho's conduct provided enough information to permit the conclusion that he exhausted his remedies under the PLRA. Recall that the July 27 grievance refers only once to Arocho's alleged incitement of an attack against Edwards: "On 5-25 I got ass[a]ulted by an i[n]mate while on GP because C.O. Arocho told another inmate a lie of why I was here." Joint App'x 60. To be sure, the July 27 grievance included other information unrelated to Arocho. But this single sentence relating to Arocho provides a "specific date," *Espinal*, 558 F.3d at 127, and describes a violent assault caused by a corrections officer's deliberate actions that, if true, would constitute a grave form of official misconduct, *see Amador*, 655 F.3d at 104 (explaining that a failure to protect is so serious that it may "suggest[] the need for policy and procedural reform"). It is reasonable to conclude that the sentence thus put WCDOC on notice that it should investigate Edwards's allegation.

Arocho responds that the July 27 grievance is unexhausted because Edwards failed to take his final administrative appeal from the denial of that grievance to the CPCRC. Instead, Arocho claims, Edwards appealed to the Chief Administrative Officer of the Old Jail and the Central Office Review Committee ("CORC"), which reviews appeals of grievances from State-run facilities. We are not persuaded. In his motion for *in forma pauperis* status in this Court, Edwards for the first time presented evidence of his appeal of the denial of his July 27 grievance to the CPCRC, as required under New York law. We conclude that evidence of Edwards's appeal to the CPCRC is material to this appeal but was mistakenly omitted from the original record. We therefore direct that the appellate record be supplemented to include that evidence. *See* Fed. R. App. P. 10(e)(2). We note that Arocho does not controvert the new evidence or object to our consideration of it. To the contrary, Arocho acknowledges that if we "believe[] a genuine issue of material fact may now exist on the basis of this . . . evidence, then [we] should remand to the district court." Appellee's Br. 32. Because we conclude that a genuine dispute of fact exists on the basis of the evidence of Edwards's appeal to the CPCRC, among other reasons, we vacate the

21

grant of summary judgment in Arocho's favor and remand to the District Court for further proceedings.

**B**

Having concluded that Edwards's failure to protect claim faltered on exhaustion grounds, the District Court understandably declined to address the merits of that claim. Arocho nevertheless argues that we may affirm on the merits because Edwards failed to adduce admissible evidence that his assault was anything other than a random, unpredictable incident of violence by a fellow prisoner. We recognize our authority to "affirm summary judgment on any ground supported by the record, even if it is not one on which the district court relied." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). But here, we conclude that an affirmance of summary judgment on the merits is unwarranted. After Arocho moved for summary judgment, Edwards filed a letter dated June 8, 2021, with the District Court, asserting that the Defendants "violate[d] discovery rules" because they never disclosed Ice's full name to him.[6]

---

[6] Edwards explained that he needed an affidavit from "Ice," who was seen on camera speaking with Arocho before the attack (and who, according to Edwards, said Arocho told Small about Edwards's charges). While Edwards only identified "Ice" by nickname during his deposition, he told defense counsel that he could identify the cell "Ice" was in; and explained that "Ice" was the "porter for 2T," a gallery "in the box"

22

Dist. Ct. Dkt. No. 120. Their failure to do so, the letter claimed, deprived Edwards of the ability to ask Ice for an affidavit that corroborated his allegations. Given Edwards's *pro se* status and his incarceration at the time, the District Court should have liberally construed Edwards's letter as an affidavit or declaration under Rule 56(d), seeking to defer consideration of summary judgment until he was provided Ice's full name and afforded an opportunity to obtain his affidavit. *See Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) (describing requirements for a Rule 56(d) affidavit or declaration). By construing the letter merely as a request to reopen discovery and denying the request without explanation, the District Court prematurely granted judgment to Arocho. *See Alphone Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016).

Accordingly, we vacate the District Court's grant of summary judgment in favor of Arocho on Edwards's failure to protect claim, and remand for reconsideration of whether Edwards can make the requisite showing if his Rule 56(d) request were granted.

---

where Edwards was sent after the attack, presumably all in an effort to help Defendants determine and provide "Ice's" full name. Joint App'x 146–47.

23

## II

We turn next to the District Court's dismissal of Edwards's conditions of confinement claims. We review a dismissal under Rule 12(b)(6) "*de novo . . .* , construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 121 (2d Cir. 2020) (quotation marks omitted).

A state "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The detainee:

> must satisfy two prongs . . . , an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a subjective prong — perhaps better classified as a *mens rea* prong or mental element prong — showing that the officer acted with at least deliberate indifference to the challenged conditions.

*Id.* (quotation marks omitted).

The subjective or mental element prong "roughly means 'recklessness.'" *Id.* A plaintiff must show, "at a minimum, culpable recklessness, *i.e.*, an act or a

24

failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quotation marks omitted). In turn, "recklessness can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell*, 849 F.3d at 29 (quotation marks omitted).

First, we conclude that Edwards has satisfied the test's objective prong. The amended complaint alleges that Edwards's cell from June 26 until October 2, 2018, was unbearably hot, without running hot water, covered in black mold "all over," and with a toilet that "constantly leak[ed]." Joint App'x 103. The complaint also describes a hole in the cell wall, and "roaming bugs . . . no matter which way I turn[ed] my head." Joint App'x 103–04. The complaint further alleges that Edwards's cell had no furniture, compelling him to eat and write on the floor. These conditions, if confirmed, are sufficiently serious to constitute objective deprivations of the right to due process. *See Gaston v. Coughlin*, 249 F.3d 156, 161, 165–66 (2d Cir. 2001) (holding that freezing temperatures, the constant presence of mice, and "human feces, urine, and sewage water" directly *outside* of a cell met the stricter Eighth Amendment objective prong).

In concluding otherwise, the District Court explained that Edwards did not allege that "the conditions . . . pose an unreasonable risk of serious damage to his health." *Edwards v. Middleton*, No. 19-CV-1362, 2020 WL 4474682, at *6 (S.D.N.Y. Aug. 3, 2020) (quotation marks omitted). The District Court pointed out, "[f]or instance, [that Edwards] does not allege how long his symptoms lasted, or if he received medical attention for such symptoms." *Id.* Insofar as the District Court required an allegation of actual injury, it misconceived the requirements of the objective prong. As we have explained, "the proper lens through which to analyze allegedly unconstitutional unsanitary conditions of confinement is with reference to their severity and duration, not the detainee's resulting injury." *Darnell*, 849 F.3d at 30. Even then the inquiry is not "subject to a bright-line durational or severity threshold." *Id.* at 32. We have made clear elsewhere that "serious injury is unequivocally not a necessary element of" even the stricter Eighth Amendment standard. *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015).

With that in mind, we conclude that the allegations that Edwards was compelled to live in a prison cell coated in black mold and overrun by vermin are enough to establish an objective deprivation that posed a serious health *risk*,

26

which is all that Edwards was required to allege under the objective prong of the constitutional test. But the grievance attached to Edwards's complaint, to which the District Court did not refer, goes even further. It reports that Edwards suffered actual damage to his health — including "trouble breathing, chest pain, dizziness, blurry vision, . . . problems sleeping"— and that his "mental state [was] being put in jeopardy by being in" the cell. Joint App'x 80, 104. Assuming the truth of these assertions, as we must in considering a Rule 12(b)(6) motion, we conclude that Edwards has adequately pleaded that the "conditions of [his] confinement . . . objectively pose an unreasonable risk of serious harm to [his] current or future health." *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020).

We turn to the subjective prong of the Fourteenth Amendment conditions of confinement test, and whether Edwards has adequately pleaded that Middleton, Lopez, and VanLierop acted with deliberate indifference to the challenged conditions. Edwards alleges that he handed Lopez a grievance concerning the conditions in his cell — including unbearable heat, lack of a working ventilation system, the smell of "mildew," a leaking toilet, a hole in the wall, and lack of furniture — but that Lopez denied it in substantial part, agreeing only that Edwards "should have a writing surface in [his] cell." Joint

27

App'x 83. Edwards further alleges that he complained about conditions in 3-East to "officers making their rounds," who told him "to keep crying like a spoiled baby to . . . Middleton and . . . VanLierop who, in turn, personally knew what all [he] was being subjected to." Joint App'x 104. At this early stage in the litigation, these allegations are enough to establish that all three corrections officers knew that the conditions of confinement in 3-East that Edwards described in his grievance posed a serious risk to his health and were deliberately indifferent to that risk. *See Darnell*, 849 F.3d at 29; *Brandon v. Kinter*, 938 F.3d 21, 37 (2d Cir. 2019); *Gaston*, 249 F.3d at 165–66.

The Defendants counter that Edwards's grievance "paints a very different picture of his housing conditions" than the complaint to which it is attached. Appellee's Br. 43. The complaint, they assert, does not specifically allege that they knew or should have known about the prison cell conditions Edwards details. But as explained above, the grievance and the amended complaint both describe a similar set of conditions and problems in Edwards's cell, and both assert that Edwards complained about those conditions to the Defendants to no effect.

Because we conclude that Edwards has adequately pleaded conditions of confinement claims under the Fourteenth Amendment against Middleton, Lopez, and VanLierop, we vacate the District Court's dismissal of the claims and remand for further proceedings as to those claims.

## III

Edwards next challenges the District Court's dismissal of his procedural due process claim arising from his administrative segregation designation and placement in 3-East. [7] The District Court dismissed this claim for two reasons. First, the court concluded, Edwards failed to "plausibly allege[] he was transferred to administrative segregation or protective custody for punitive reasons rather than the legitimate purpose of maintaining institutional security." *Edwards*, 2020 WL 4474682, at *7. Second, Edwards failed to "identify any state statute, regulation, or rule that arguably creates a liberty interest in his housing classification." *Id.* We respectfully disagree.

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions

---

[7] The District Court also read Edwards's complaint to raise a substantive due process claim, but Edwards does not challenge the dismissal of that claim on appeal.

29

amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

This is because "under the Due Process Clause, a detainee may not be punished

prior to an adjudication of guilt in accordance with due process of law." *Id.*

"[P]unishment can consist of actions taken with an expressed intent to punish,"

or of "actions [that] are not rationally related to a legitimate nonpunitive

governmental purpose or that . . . appear excessive in relation to that purpose."

*Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quotation marks omitted).

Although a "detainee[] qua detainee[]" cannot be constitutionally punished, *Bell*,

441 U.S. at 539, "the government has a legitimate interest in the security of

prisons, and . . . prison officials should be afforded deference in the adoption and

execution of policies and practices . . . needed to preserve internal order and

discipline and to maintain institutional security," *Almighty Supreme Born Allah v.

Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quotation marks omitted).  For the reasons

explained above, Edwards has adequately alleged that the conditions of his

confinement amount to punishment within the meaning of the Clause.  *See id.* at

54–55.

Edwards has also adequately alleged the other due process requirements

— a lack of notice, an opportunity to be heard, and meaningful periodic review

of Edwards's status relating to his continued placement in 3-East. *See Proctor v. LeClaire*, 846 F.3d 597, 610–11 (2d Cir. 2017). In particular, Edwards alleges, Assistant Warden Middleton informed him that he would be relocated to 3-East for engaging in misconduct; when Edwards responded that the misconduct charge would be disproven by video recordings, Middleton "brushed [Edwards] off. . . and . . . stated to [Edwards] that [he] will now suffer in this 3-East Witness Room #1 until [he] leave[s] and [he] should know how to get off of this." Joint App'x 98. This allegation supports the reasonable inference that Edwards was not given notice of or a meaningful opportunity to challenge the misconduct charge against him.

We also conclude that the complaint, when read liberally, adequately alleges the absence of any meaningful periodic review of his continued detention in 3-East. Although the correctional facility may use an "informal" procedure to conduct such reviews for a pretrial detainee, the reviews must still "consider new relevant evidence as it becomes available." *Proctor*, 846 F.3d at 609, 611 (quotation marks omitted). It is "not sufficient for officials to go through the motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined . . . no matter what the

evidence shows. Review with a pre-ordained outcome is tantamount to no review at all." *Id.* at 610.

Here, Edwards alleges that Middleton ignored the video recordings and decided to keep Edwards in 3-East no matter what the recordings or other evidence showed. The allegation finds support in Middleton's alleged statement that Edwards "will now suffer in this 3-East Witness Room #1 until [he] leave[s]." Joint App'x 98. A fair reading of these allegations, then, is that Middleton "developed a pre-review conclusion that [Edwards] will be confined" in 3-East for the duration of his detention. *Proctor*, 846 F.3d at 610*.*

Measured against the standards of due process, Edwards has plausibly alleged that he failed to receive all the process that was due at "'a meaningful time and in a meaningful manner.'" *Id.* at 609 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). For these reasons, we vacate the District Court's judgment insofar as it dismissed Edwards's procedural due process claim, and we remand for further proceedings as to that claim.

**IV**

Finally, Edwards challenges the *sua sponte* dismissal of his claims against WCDOC. The District Court justified the dismissal of those claims based on its

understanding that "municipal agencies or departments do not have the capacity to be sued under New York law."  Joint App'x 87.  But the established standard in this Circuit is materially narrower.  A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*.  *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Ximines v. George Washington High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008).  With the correct standard in mind, we conclude that WCDOC *can* be sued under section 194.61 of the Westchester County Charter, which provides:

> All notices of claim, processes and papers for the commencement of actions and legal proceedings against the County of Westchester *or any commission, department or bureau thereof* shall be served as provided by law and all actions or proceedings wherein the County of Westchester *or any agency, commission, department or bureau thereof* is a party shall be brought and maintained in the County of Westchester.

Westchester County Charter § 194.61 (emphases added).

In opposition, the Defendants assert that the dismissal of WCDOC has no practical consequence as long as Westchester County remains a Defendant.  Because the District Court did not rely on the distinction between WCDOC and Westchester County in dismissing the complaint against WCDOC, we decline to address this argument in the first instance.  We therefore vacate and remand the

District Court's dismissal of Edwards's claim against WCDOC, so that it can consider the claim in light of the correct standard of municipal agency liability.

## CONCLUSION

We have considered the Defendants' remaining arguments on appeal, and we conclude that they are without merit. For the foregoing reasons, we **VACATE** the judgment of the District Court and **REMAND** for further proceedings consistent with this opinion.[8]

---

[8] The District Court did not explicitly address all of the claims against Defendants Roberts and Grant insofar as those were independent of the claims against other individual Defendants. We therefore leave it to the District Court on remand to determine if any claims against them should be dismissed.